ALFRED GARTHE, Respondent, *v.* JACOB RUPPERT, Appellant.

(Argued April 18, 1934; decided May 22, 1934.)

*Grant C. Fox* for appellant. Defendant was not negligent. It violated no legal right of plaintiff whether he be held to have been a mere licensee or an invitee. (*Weitzman* v. *Barber Asphalt Co.*, 190 N. Y. 452; *Cusick* v. *Adams*, 115 N. Y. 55; *Fox* v. *Warner-Quinlan A. Co.*, 204 N. Y. 240; *Larkin* v. *O'Neill*, 119 N. Y. 221; *Hart* v. *Grennell*, 122 N. Y. 371; *Flynn* v. *C. R. R. Co.*, 142 N. Y. 439; *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391; *Beck* v. *Carter*, 68 N. Y. 283; *Lindsley* v. *Stern*, 203 App. Div. 615; *De Negro* v. *Christman*, 77 Misc. Rep. 47; *Thomas* v. *Quartermaine*, 18 Q. B. D. 685; *Bennett* v. *Railroad Co.*, 102 U. S. 577.) The trial court erroneously admitted, on behalf of plaintiff, testimony as to how certain portions of the premises of three other breweries were constructed, how they handled the incoming and the spent grains, and as to the condition of their toilets. (*Rich* v. *Pelham Hod Elevating Co.*, 23 App. Div. 246; *Jarvis* v. *Brooklyn El. R. R. Co.*, 133 N. Y. 623; *Shannahan* v. *Empire Engineering Co.*, 204 N. Y. 543; *McMichael* v. *Federal Printing Co.*, 139 App. Div. 225; *Bennett* v. *Long Island R. R. Co.*, 163 N. Y. 1.)

*Milton Speiser, Joseph Speiser* and *Arthur L. Gould* for respondent. The defendant was negligent in violating a duty that he owed to the plaintiff. (*Hamblet* v. *Buffalo Library Garage Co.*, 222 App. Div. 331; *Miller* v. *International Harvester Co.*, 193 App. Div. 258; *Peil* v. *Reinhart*, 127 N. Y. 381; *Christensen* v. *Hannon, Inc.*, 230 N. Y. 205; *Conway* v. *Naylor*, 222 N. Y. 437; *Palmer* v. *Dearing*, 93 N. Y. 7; *Larsen* v. *Lackawanna Steel Co.*, 146 App. Div. 238; *Kettle* v. *Turl*, 162 N. Y. 255; *Sharp* v. *Erie R. R. Co.*, 184 N. Y. 100; *Siegel* v. *American*

*Seating Co.*, 161 App. Div. 54; *Reinzi* v. *Tilyou*, 252 N. Y. 97; *Keegan* v. *Hohorst*, 261 N. Y. 566; *Stokes* v. *City of New York*, 258 N. Y. 564; *Magid* v. *City of New York*, 259 N. Y. 618.)

CRANE, J. The defendant Jacob Ruppert maintains a brewery at the southeast corner of Third avenue and Ninety-second street, New York city, photographs of which form part of the record. It was erected about 1918, and to all appearances is a smart, up-to-date factory for making beer. The entrance to the offices is on Third avenue. An elevator takes one to the sixth floor where the offices are situated.

The brew yard is on the ground floor and is entered from Ninety-second street. It is about a hundred feet by a hundred feet, into which the trucks drive. The floor of the yard is of cobblestones. It is the receiving department, to which is brought malt, hops, rice, grain, grits, sugar, syrup, cellulose, boxes, sawdust and other articles. The things which are taken out of this yard are the waste or spent grains sold to and removed by the Farmers Feed Company, also malt syrup in cans, barrels, empty boxes and cartons. By processes described in the evidence, the malt is dumped into chutes on the ground floor, and taken by the conveyer to bins and gives off the dust which spreads over the floor. On the other side of the yard are hoppers with spouts, through which the spent or waste grains — mash — are discharged into carts. This waste is wet as it comes through the hopper and spouts.

That the process of making beer is more or less a wet and sloppy business is indicated by the fact that most of the men who work inside the brew house wear rubber boots. When malt and grain are dumped into the chutes and conveyers in the brew yards dust naturally arises and settles on the floor.

It is evident beyond the point of contradiction that the brewery business carried on by the defendant made the floor of the yard and other places where the men worked

necessarily wet, mushy, slippery and sloppy. Mr. Rup-
pert was not unmindful of this, for he had provided, off
from the ground floor, an up-to-date locker room such as
we find in some of the golf clubs and gymnasiums where
the men could keep and change their clothes. Off from
this locker room was a toilet with modern equipment and
places for the men to wash up. As the men, dirty from
their work, came in to this place to clean up, they brought
some of the dirt with them. The locker, toilet and the
wash room were places made and maintained for the
workmen where they came to change their clothes, wash
and clean up. We must view conditions with an eye to
the purpose of the place and the nature of the employ-
ment. This place was maintained for work and for
workmen in a wet and mushy employment. No one
would expect such a place to be kept as neat and as tidy
as a wash room and toilet in a club, hotel or for the use of
patrons and customers in stores.

What has just been said was well known to Mr. Alfred
Garthe, the plaintiff, who for many years was in the
defendant's employ. Lately he had been living in Jersey
carrying on an independent business of selling and
distributing drinks, part of the defendant's product. He
did business with the defendant as a customer, and on
June 25, 1929, went to the defendant's office on the sixth
floor to see about his financial account. When he got
through he went into the yard to see one of the foremen
on a personal matter. He asked permission to use the
wash room and toilet, and while in there slipped on the
floor and hurt his head. He says the floor was not clean;
that it was slippery from brewery material which had
been dragged in apparently on the boots of the employees.
He says that Ruppert was negligent in not keeping this
place clean for his use. The answer to his claim is this:
Ruppert was running a brewery, a place of manufacture,
and maintained this locker room for the purpose above
indicated. It was a place where men were expected to

bring in their dirty boots and clothes and clean themselves, and the plaintiff knew from past experience, as well as everybody else connected with the business, that this wash room would not be at all times clean and dry. The place took on the condition which necessarily arose out of the performance of the work. Its slippery, sloppy condition was caused by the men; they had to clean up somewhere.

The defendant maintained this place for his workmen. It apparently was safe enough for them; for it had been in use for some time. He was not maintaining it for the benefit of customers. Their place of like nature was on the sixth floor, where ample accommodation was furnished for the needs of patrons. This place down in the work shop off from the malt receiving room and yard, where moisture and mussy, damp mash were scattered about, was for the use of workmen and employees. The defendant owed this plaintiff no duty to clean it and make it dry for his special use. Work was going on, surrounded by all those necessary little dangers which accompany activities in factories and breweries. The duty of the defendant was none other than to keep the place reasonably safe for the purpose for which it was maintained — the use of the workmen whose boots must necessarily be dirty and wet as they came into the locker room and the toilet.

Where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises the owner is not liable for negligence, for such person has taken all the risks upon himself. A person who makes use of the premises of another for his own convenience and without any sanction save the omission of the owner to forbid him from doing so, has no legal cause of complaint against the owner by reason of having blundered into some open and apparent danger.

(*Cusick* v. *Adams*, 115 N. Y. 55; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 N. Y. 240.)

The plaintiff in this case claims to have been an invitee in the yard and in the wash room with the permission of the owner and his foreman. As a customer he claims to have had some business with the man he was looking for in the yard. Even considering him as an invitee, defendant has failed in no duty owing to him as such. The defendant was called upon to use reasonable prudence and care to keep this yard, wash room and toilet in such a condition that people who went in there by his invitation were not unnecessarily or unreasonably exposed to danger. (*Larkin* v. *O'Neill*, 119 N. Y. 221; *Hart* v. *Grennell*, 122 N. Y. 371; *Dougherty* v. *Pratt Institute*, 244 N. Y. 111; *Fishman* v. *Brooklyn Jewish Center, Inc.*, 234 App. Div. 319 [slippery dance floor].)

Considering the nature of the business, the proximity of the toilet and the wash room to the yard and the purpose for which these were used by the workmen, coupled with the fact that the plaintiff was familiar with the place and the use, and that the toilet was fully lighted and the condition of the floor apparent to any one using his eyes, we do not see wherein the defendant unnecessarily or unreasonably exposed the plaintiff to danger. The record is barren of any such evidence. In fact, the plaintiff sought to cover this omission by incompetent proof.

The plaintiff proved, over objection and exception, that in another brewery the work was done in a better way than by Ruppert; that the necessary goods and grains were received and the waste discharged and carried away without dust upon the one hand and moisture upon the other. It was reasoned by the plaintiff that if other breweries could do this, then Ruppert should have done it. Such evidence is incompetent to prove negligence. One man is not obliged to run his business the same as some other man, nor can he be judged before the law according

to the methods employed by others. When, however, a custom has prevailed in the trade or in the calling, or certain dangers have been removed by a customary way of doing things safely, this custom may be proved to show that a manufacturer or any one else employing men has fallen below the required standard. Never, however, has it been permitted to take one or two instances as a gauge or guide in place of the custom of the trade. Ruppert was not obliged to change his factory or the methods of receiving and discharging his goods in his yard in order that the wash room off the locker room for his employees might be kept dry instead of wet.

General usage or custom may be shown in order to establish a standard of construction and equipment. When a question of negligence is involved the general usage or practice is competent to show either ordinary care or the failure to exercise such care. (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543.) One is not obliged, however, to use the best methods or to have the best equipment or the safest place, but only such as are reasonably safe and appropriate for the business. (*Bennett* v. *Long Island R. R. Co.*, 163 N. Y. 1; *Miele* v. *Rosenblatt*, 164 App. Div. 604.) What some other brewery did might have been better and safer than the ways of Ruppert, but there was no attempt to prove that what the other brewery or breweries did or had was the practice or custom or general usage in the business. For this reason it was incompetent.

Reference was made to the Code of New York City Ordinances (Baldwin's 1933 N. Y. Code of Ordinances), chapter 20, section 55, which requires a factory to keep cleanly and in a sanitary condition its rooms and offices. Section 284 requires every owner of a boarding house or factory to provide water closets and keep them properly lighted and ventilated in a sanitary condition. To the same effect is the Labor Law (Cons. Laws, ch. 31) (Laws of 1921, ch. 50, § 291). There is no claim in

this case that the toilet was not properly constructed, ventilated and cleanly, so far as related to its sanitary condition. The sloppy condition of the floor, as has been said, arose from the nature of the work and is not such a condition as is referred to by these ordinances. Besides, the plaintiff was not an employee.

The error in the admission of the evidence alone would be sufficient to require reversal of this judgment, but as we are unable to see wherein lies the defendant's negligence we must not only reverse this judgment, but dismiss the complaint.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.