JOHN REGAN, Respondent, *v.* EIGHT TWENTY FIFTH CORPORATION, Appellant.

First Department, November 1, 1940.

*James J. McLoughlin* of counsel [*Francis J. McLoughlin* with him on the brief; *John J. Kirwan*, attorney], for the appellant.

*Thomas A. McKennell* of counsel [*Aaron Goody* and *Manville H. Abramson* with him on the brief; *Junius P. Abramson*, attorney], for the respondent.

GLENNON, J. Plaintiff has recovered damages for personal injuries sustained on October 29, 1936, while operating an open platform elevator or hoist located in the center of the courtyard in the rear of defendant's premises, No. 820 Fifth avenue, city of New York. It was constructed in 1916 by the Otis Elevator Company. At that time a certificate of approval was obtained from the bureau of buildings. Since then the city department has made inspections every six months. The elevator was operated between the subbasement and the courtyard, a distance of eighteen feet six inches.

The platform of the elevator was five feet four inches long and three feet six inches wide. There were no side panels or toe boards on the elevator, thus permitting ash cans to be rolled off at either end. It was operated by pulling cables which set electric machinery in motion for upward and downward movements. Originally there was a chain attached to the cable below the platform level which was used for the purpose of lowering the elevator. An opening in the floor permitted the chain to pass through. The chain was held in position by a ring which fitted into the floor of the platform. Concededly, a number of years before the happening of the accident, the chain and ring were removed. It is asserted by the defendant that the purpose was to prevent children, who had occasion to play in the courtyard, from operating the elevator.

The plaintiff on the day of the accident was in the employ of a contractor who was engaged on a plastering job in the apartment of a tenant on the eighth floor. The materials for this work were delivered to the sidewalk, carried into the courtyard and thence to the place where they were to be used. They were taken from the basement on the freight elevator which stopped at the basement level. Plaintiff obtained some ash cans from the assistant superintendent of the building and filled them with sand in the rear of the premises. He placed the cans of sand on a "dolly," which is a low setting platform on wheels, and pushed them upon the elevator. He lowered the elevator by the use of one of the cables, made his delivery and returned to the elevator with the empty

cans, which had been placed upon the "dolly." He could have fastened the cans securely to the "dolly," set the elevator in motion and caused it to return with the empty cans to the courtyard level, and then used a flight of stairs consisting of some six or seven steps to reach the courtyard himself. However, he elected to ride up with the "dolly" and empty cans. He stood at the end of the elevator platform and held onto the "dolly" with his right hand. With his left he pulled the hand rope to set the elevator in motion upward. During the course of the trip, one of the cans became dislodged, fell against the wall and thus, according to the plaintiff's testimony, forced the "dolly" against him in such a way that his legs were pushed between the side of the elevator shaft and the platform. Apparently he could not reach the hand rope for the purpose of stopping the elevator, with the result that he received his injuries.

In order to succeed in upholding his recovery, plaintiff must establish the negligence of the defendant and, in addition thereto, his freedom from contributory negligence. He was the only eye witness to the accident.

The first difficulty that confronts plaintiff is to establish the negligence of the defendant. The latter was under no obligation to make any structural changes in its courtyard elevator. Although it had been in use for twenty years, still there was no evidence indicating that any accidents had happened in connection with its operation during that period of time. The elevator had been approved by the city authorities whose duty it was to make inspections. We cannot say that it was obviously dangerous. It had been in daily use without any untoward happenings. There was no violation filed by the building department. An inspection was made by the acting chief on the day following the accident and he found the elevator to be in good condition and so reported to his department. According to his testimony the elevator complied with the rules and regulations which applied to elevators installed prior to December 12, 1931. No obligation, therefore, rested upon the defendant to make any changes. As Judge CRANE said in *Garthe* v. *Ruppert* (264 N. Y. 290, 296): "One is not obliged, however, to use the best methods or to have the best equipment or the safest place, but only such as are reasonably safe and appropriate for the business."

The removal of the ring and chain could have no bearing upon the accident since the platform was almost entirely covered by the "dolly" and plaintiff's position in ascending would have precluded him from reaching the ring even if it had been there. Furthermore, the testimony indicates that the ring could be used

only for the purpose of starting the elevator downward and not for bringing it to a stop in its upward movement before it reached the courtyard level.

The testimony given by the elevator expert as to the requirements covering sidewalk elevators, which he stated applied also to courtyard elevators, should not have been received. (*McKinney* v. *N. Y. Consolidated R. R. Co.*, 230 N. Y. 194.)

If we were to concede that there was a danger connected with the use of the elevator, the plaintiff who had operated it on a number of prior occasions must have been aware of that fact. He knew that it was not inclosed except by the sides of the shaftway. He could have, it seems to us, so guarded the wheels of the " dolly " and fastened the cans together in such a way that they would not become dislodged. He could have started the elevator upward, as we have already pointed out, and walked up the steps leading to the courtyard. Yet he chose not to do so. Instead he placed himself in a position which was obviously dangerous.

For the reasons assigned the judgment should be reversed, with costs, and the complaint dismissed.

MARTIN, P. J., TOWNLEY and CALLAHAN, JJ., concur; DORE, J., dissents and votes to affirm.

DORE, J. (dissenting). Under the proof adduced the issues of negligence and contributory negligence were for the jury. " General usage or custom may be shown in order to establish a standard of construction and equipment. When a question of negligence is involved the general usage or practice is competent to show either ordinary care or the failure to exercise such care." (*Garthe* v. *Ruppert*, 264 N. Y. 290, 296.) In the conceded absence of any stopping device whatsoever, and in the face of testimony of a general usage or practice that some such device should have been installed, the essential issue on appeal is whether we can say as a matter of law that there was no evidence from which the jury could infer that the absence of a stopping device was the proximate cause of the accident. I think that was an issue of fact properly submitted to the jury. There may be more than one proximate cause if each cause asserted can be seen to be an efficient one, without which the injury resulting would not have been sustained. (*Sweet* v. *Perkins*, 196 N. Y. 482, 485.)

For the reasons stated I vote to affirm.

Judgment reversed, with costs, and the complaint dismissed, with costs.