SUMNER, ADMX., APPELLANT, *v.* LAMBERT ET AL., APPELLEES.

54

(No. 2224—Decided December 8, 1953.)

*Mr. Arthur T. Eaton* and *Mr. Robert B. Brumbaugh,* for appellant.

*Messrs. Curtner, Brenton & O'Hara,* for appellees.

WISEMAN, P. J.   This is an appeal on questions of law from a judgment of the Common Pleas Court of Montgomery County, which directed a verdict in favor of defendants at the close of the plaintiff's case in an action for wrongful death.

The Hoke Plumbing Company, the employer of plaintiff's decedent, held the primary contract to do the plumbing work for Forsythe Homes, Inc., which was engaged in building a large number of residences. The Hoke Plumbing Company engaged C. D. Webb to dig the ditches from the main sewer to the basement wall.   Webb in turn subcontracted this work to Lambert Brothers, a partnership, the defendants herein, who were in the excavating business.   The defendants contracted to dig a straight ditch of the required depth and approximately 30 inches wide, from the main sewer to the basement walls.   The defendants were not required under their contract to do any sloping, shoring or bracing of the ditch wall.

On May 22, 1948, the defendants dug four ditches. The employees of The Hoke Plumbing Company, one of whom was plaintiff's decedent, followed closely behind the defendants' excavating equipment to lay the tile in the ditch and make the connection with the main sewer.   No precautionary measures were taken by The Hoke Plumbing Company or its employees in sloping, shoring or bracing the ditch walls while laying the tile and making connection with the sewer.   When the Lambert Brothers finished the digging of the fourth and last ditch on the day in question, they moved their excavating equipment some distance away and left the job.   Their work had been finished and the premises.

were turned over to The Hoke Plumbing Company. Immediately the employees of The Hoke Plumbing Company, who had completed the work of laying the tile in the other three ditches, began to lay tile in the fourth and last ditch. While other workmen of The Hoke Plumbing Company were laying tile in the ditch near the basement wall, the plaintiff's decedent proceeded to make the connection with the main sewer. The ditch was approximately 50 feet long, extending in a northerly and southerly direction, and approximately four to five feet deep at the basement wall, being the north end, and from nine to 11 feet deep at the main sewer, being the south end. The ditch was approximately 30 inches in width, with vertical sides. The earth was mostly sandy clay. The weather was fair and the earth was dry. The defendants excavated the ditch by the use of a steam shovel and piled the earth on the east side of the ditch. While the plaintiff's decedent was in a crouched position in the south end of the ditch, and engaged in removing a small quantity of earth near the main sewer preparatory to making the connection, the wall on the east side of the ditch caved in and covered him with three feet of earth, causing his death by suffocation.

The case was presented to the jury on the second amended petition of the plaintiff, the amended answer of the defendants, and the reply of plaintiff. Plaintiff's claim was grounded on common-law negligence. Plaintiff alleged four specifications of negligence:

1. Failure to slope or step down the vertical sides of the ditch.

2. Failure to brace or shore the vertical sides of the ditch.

3. Undercutting the vertical sides of the ditch.

4. Piling the excavated earth so close to the edge of the ditch as to cause a cave-in, to wit, less than 18 inches from the side of the ditch.

The defendants in their amended answer set up four defenses. The first defense, after making certain admissions, was a general denial. In the second defense the defendants alleged that the cave-in occurred after the defendants had completed their work of excavating the ditch and while the premises were under the sole and exclusive control of the employer of plaintiff's decedent. In the third defense, the defendants pleaded contributory negligence and in the fourth defense they pleaded assumption of risk. The reply was in the nature of a general denial.

The evidence showed that the cave-in occurred approximately two hours after the defendants had finished the excavating and after they had moved their equipment some distance away and left the job. The defendants had excavated in a similar manner approximately 134 of such ditches in the project. The defendants were not required under their contract with Webb to slope, shore or brace the sides of the ditch. The defendants under their contract were required only to excavate a straight ditch of approximately 30 inches in width, the required depth, from basement wall to the main sewer, and leave it in this condition for other contractors and their workmen to perform their work. The evidence shows that the defendants performed their work as required by the contract. A short time before the cave-in, some earth near the water main, which was approximately 8 or 9 feet from the main sewer, fell into the ditch, whereupon the employees of The Hoke Plumbing Company shoveled such earth out of the ditch.

There is conflict in the evidence as to the location of the excavated earth. Some of the witnesses testified that the excavated earth was piled so close that fine particles of earth rolled into the ditch; other witnesses testified that there was space for the workmen to walk between the edge of the ditch and the pile of earth. At

the deep end of the ditch, where the cave-in occurred, and where a greater amount of earth had been excavated, the earth was piled four or five feet high. There is no evidence that the sides of the ditch had been undercut as alleged.

The plaintiff's decedent was an apprentice plumber and had worked mostly indoors, but occasionally was assigned to work on this project, and he had previously assisted in the laying of tile and the making of connections with the main sewer. All the ditches excavated by the defendants on this project, numbering approximately 134, were excavated as straight ditches, without sloping, shoring or bracing. Furthermore, The Hoke Plumbing Company, the employer of plaintiff's decedent, did nothing in the way of sloping, shoring or bracing the sides of any of these ditches to protect its employees.

At the close of plaintiff's case the court directed a verdict for defendants, stating that there was no evidence that the sides of the ditch had been undercut; that the evidence shows that the sides of the ditch were vertical, without being sloped, shored or braced; and that there was considerable evidence indicating that the excavated earth was piled nearer than 18 inches from the side of the ditch. The court found that all four specifications of negligence coincided with specific safety requirements adopted by the Industrial Commission of Ohio. The court ruled that those requirements applied only to employers for the protection of their own employees and did not extend to plaintiff's decedent, who was not an employee of the defendants. The court ruled that plaintiff's right of recovery was grounded on common-law negligence; that under the evidence, plaintiff's decedent assumed the risk; and that, while there was a conflict in the evidence as to the location of the excavated earth, the evi-

dence left it to the conjecture of the jury as to the proximate cause of the cave-in.

The plaintiff, appellant herein, first filed 12 separate claimed errors. In his brief counsel for plaintiff does not discuss the 12 errors assigned, but discusses the claimed errors under three general headings, all which are embraced in the 12 errors previously assigned. We are required to pass on only the errors discussed in plaintiff's brief.

The plaintiff contends that the court erred in directing a verdict for the defendants as it was contrary to law and the evidence. This assignment of error is all-inclusive, and under it several propositions are raised. The court, in sustaining the defendants' motion for directed verdict, made a lengthy statement to the jury in which the questions raised in the trial were discussed. A statement of the court relative to proximate cause, assumption of risk, and specific safety requirements promulgated by the Industrial Commission of Ohio cannot be made the subject of an assignment of error on the basis of an improper charge to the jury. No charge is necessary in sustaining a motion for directed verdict, and anything said to the jury by the trial judge in so directing the verdict cannot be made the subject of error. Such matters can be made the subject of an assignment of error in determining whether the evidence in its entirety is or is not sufficient under the issues to warrant sending the case to the jury, or in determining whether the trial court erred in the admission or exclusion of evidence. These questions will be so discussed.

We find no error in the refusal of the trial court to permit the plaintiff to introduce into evidence the specific safety requirements relating to building and construction work adopted by the Industrial Commission of Ohio, as revised effective July 15, 1942, and

being bulletin No. 202. The plaintiff sought the introduction of such specific safety requirements for the purpose of giving the jury a standard of care by which to judge the conduct of the defendants in excavating the ditch. The trial court ruled, and we believe correctly, that the specific safety requirements had no application to the issues presented; that such requirements apply to employer and employee; and that plaintiff's decedent was not an employee of the defendants. 65 Corpus Juris Secundum, 1061, Section 240; *Garthe* v. *Ruppert,* 264 N. Y., 290, 190 N. E., 643; *Neadors* v. *Huffman,* 191 Okl., 204, 127 P. (2d), 806; *Mechler* v. *McMahon,* 184 Minn., 476, 239 N. W., 605, 608.

The plaintiff sought to introduce into evidence certain photographs of the ditch, taken at the time persons were engaged in an effort to revive the decedent in the bottom of the ditch. The court ruled that such photographs were inadmissible on the ground they would prejudice the jury, since the photographs primarily depicted the efforts to revive the decedent. We agree with the trial court that the photographs would have had a tendency to stir the emotions of the jury to the prejudice of the defendants. Other photographs showing the condition of the ditch were admitted in evidence. Therefore, the exclusion of the photographs in question was not prejudicial.

After plaintiff rested, and before the court ruled on the motion of the defendants for a directed verdict, plaintiff requested leave to amend her petition and moved that the case be reopened for the purpose of introducing evidence to the effect that the work performed by the defendants was not done in a workmanlike manner and was not done according to the general custom, usage and practice of excavating contractors in the general vicinity. Defendants objected on the ground of surprise and departure from the allegations

in the petition. Plaintiff's motion was overruled. Plaintiff claims that the trial court abused its discretion. It will be observed that the request was not for an amendment of the petition to conform to the proof. As we view it, the plaintiff was not entitled to the amendment and the right to reopen the case as a matter of right. Such matters lie within the sound discretion of the trial court. 39 Ohio Jurisprudence, 650, Section 76. We fail to find an abuse of discretion or the commission of prejudicial error in the action taken.

The trial court recognized the conflict in the evidence relative to the location of the excavated earth, but questioned whether the placing of the excavated earth near the side of the ditch was the proximate cause of the cave-in; and recognized that on this question the jury could only speculate or conjecture whether the location of the excavated earth caused the cave-in. The evidence shows that the loose dirt was piled four or five feet high and the evidence most favorable to the plaintiff was that it was so near the edge of the ditch that particles fell into the ditch. It was not necessary that plaintiff be able to prove the cause of the cave-in by direct evidence, but it was sufficient if evidence supported the inferences which might reasonably be drawn by the jury. Whether the location of the excavated earth was a proximate cause of the cave-in, or caused more earth to fall or roll into the ditch and cover the decedent was a jury question, as were the questions of contributory negligence and assumption of risk on the part of plaintiff's decedent in the light of the facts presented. 29 Ohio Jurisprudence, 718, 742, Sections 200, 206 and 207. We find these assignments of error well made, and this would require a reversal and a remand for new trial but for the ruling of this court on the principal issue in the case.

We come now to a consideration of the principal and determinative question in the case. It is contended

by the defendants that they should not be chargeable with common-law negligence in failing to slope, shore or brace the walls of the ditch, or in piling the excavated earth too near the side of the ditch for injuries suffered by an employee of The Hoke Plumbing Company, after the defendants had completed their work, had left the job, and had placed the premises in the complete possession and control of The Hoke Plumbing Company and its employees. Without question, the evidence shows that The Hoke Plumbing Company had accepted the work of the defendants and had approved the work of excavation performed by the defendants without any precautionary measures being taken by the defendants in sloping, shoring or bracing the sides of the ditch. In fact, the evidence clearly shows that the defendants never contracted with Webb or The Hoke Plumbing Company to slope, shore or brace the sides of the ditch. The evidence shows that the defendants performed their work in accordance with the contract, to wit, to dig a straight ditch. Did these facts impose a common-law liability on the defendants for negligence in the failure to slope, shore or brace the sides of the ditch? Unquestionably, The Hoke Plumbing Company owed a duty to its own employees to protect them against a cave-in while laying tile in the ditch. Can the defendants be held liable also? As a general rule, one tort-feasor may not claim exoneration on account of the fault of another. The facts in this case call for the application of the law with respect to the liability of subcontractors or independent contractors for an injury suffered by a third person. Counsel for the plaintiff cite 2 Restatement of the Law of Torts, 1024, Section 384, as authority for a principle of law holding the defendants liable. However, in the examination of this principle of law we find it to be applicable only ''while the work is in his charge.'' In the instant case the work on the ditch was no longer

in charge of the defendants; the work of the defendants had been accomplished. At the time of the cave-in, the work was being done by The Hoke Plumbing Company, and the ditch was in its sole possession and control. We find the principle of law stated in 2 Restatement of the Law of Torts, 1030, Section 385, to be applicable. This principle is stated as follows:

"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those stated in Sections 394 to 398, 403 and 404 as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."

It will be observed that this principle of law is analogous to the principle of law fixing liability on a manufacturer of an article which is of a dangerous character, which fact is unknown to the user.

In comment *b* is found this statement:

"As the liability of a servant or an independent contractor who erects a structure upon land or otherwise changes its physical condition is determined by the same rules as those which determine the liability of a manufacturer of a chattel, it follows that such a servant or contractor who turns over the land with knowledge that his work has made it dangerous in a manner unlikely to be discovered by the possessor is subject to liability both to the possessor, and those who come upon the land with the consent of the possessor or who are likely to be in its vicinity."

It will be observed that this principle of law has no application to the uncontradicted facts in this case. There is no evidence in this case to show that the defendants had knowledge that their work was inherent-

ly dangerous to any persons coming upon the premises for the purpose of doing further work. Furthermore, this principle of law is applicable only where the dangerous condition of the land is unlikely to be discovered by the possessor or other person coming upon the land. In the instant case, The Hoke Plumbing Company and its employees were able to observe equally as well as the defendants the condition of the excavated ditch and to determine whether it was dangerous.

Counsel for the plaintiff cite also a statement from 38 A. L. R., 431, Section 12. We do not believe that this statement of the law applies to the facts in this case for the reason that the defendants had performed their work under the contract, had moved their equipment from the premises, had turned over possession and control to the decedent's employer, and their work had been accepted by such employer. The applicable principle of law is stated in 65 Corpus Juris Secundum, 613, Section 95, paragraph *b*, under the heading, "After Completion and Acceptance of Work."

The rule of law is stated as follows:

"As a general rule, after the work has been completed and turned over to, and accepted by, the owner, the contractor is not liable to third persons for injuries suffered by reason of the condition of the work."

The text under the headnote is as follows:

"It is a well-established general rule that, where the work of an independent contractor is completed, turned over to, and accepted by, the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least if the defect is not hidden but readily observable on reasonable inspec-

tion. A fortiori, the contractor is not liable where he performed the work in strict accordance with the terms of their contract or where the injury is not due to the condition in which he left the work. There are also well recognized exceptions to the general rule, one of which is that the contractor is liable where the work is a nuisance per se, or inherently or intrinsically dangerous, and another of which is that he is liable where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons, particularly where there is a continuous duty of inspection on the contractor after completion of the work, provided, in the case of a dangerous situation, the contractor knows, or should know, of the situation created by him, and the owner or contractee does not know of the dangerous condition or defect and would not discover it by reasonable inspection."

Again, on page 616, the text reads as follows:

"Also, like the general contractor, the subcontractor is not liable for injuries resulting from defective work after he has transferred control and possession to the general contractor, but he may be liable, under some circumstances, for damages suffered by a third person after the work was completed and turned over, as where he so negligently performed the subcontract as to render the work or structure unsafe and dangerous when put to its contemplated use, and he knew of the dangerous condition, and the person injured did not know thereof and could not have ascertained it by careful inspection."

It will be observed that this principle of law governing the liability of a subcontractor or independent contractor turns upon the following factors, i. e., the acceptance of the work by the owner or the general contractor: the knowledge of the dangerous condition on the part of the subcontractor or independant contrac-

tor; and the lack of knowledge of the dangerous condition on the part of the person injured. Numerous cases are cited from various jurisdictions supporting this proposition of law.

In the footnote on page 613 is found the reason for the rule, which is stated as follows:

"The rule is based on the reason that the negligence of the owner, and not that of the contractor, is the proximate cause of the injuries, the theory being that, by occupying and resuming exclusive possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. *Miller* v. *Davis & Averill*, 61 A. (2d), 253, 137 N. J. Law, 671."

Again, on page 613, is found the footnote:

"Practical acceptance of the contractor's work after completion thereof is sufficient to bring the case within the operation of the rule; a formal acceptance is not required."

In the instant case, the evidence shows that there was a practical acceptance of the premises and control of the excavated ditch by The Hoke Plumbing Company after the defendants had finished the completion of the excavation and left the premises. The general principle of law stated above in its applicability to dangerous conditions is analogous to the position of the manufacturer of a dangerous article.

This analogy is stated in the footnote on page 613 as follows:

"Position of contractor after he has completed building which is accepted by owner is substantially that of a manufacturer around whom the common law generally throws a strong arm of protection, warding off claims of third persons, not direct purchasers, for personal injuries sustained from use of articles manufactured and sold by him, unless article causing injury is of an abnormally dangerous or noxious nature or

nature of thing is such that it is reasonably certain to place life and limb in peril when negligently made. *Hale* v. *Depaoli,* 201 P. (2d), 1, 33 Cal. (2d), 228.''

Again, on page 614, it is stated:

''The outstanding reason for nonliability in these cases is that the causal connection which must exist between the negligent act and the injury has been broken. *Grodstein* v. *McGivern,* 154 A., 794, 303 Pa., 555.''

Also, on this proposition of law, see *Higgins* v. *Otis Elevator Co.,* 69 Ga. App., 584, 26 S. E. (2d), 380; *Johnston* v. *Long,* 56 Cal. App. (2d), 834, 133 P. (2d), 409, 411; *Kelburn* v. *P. J. Walker Co.,* 38 Cal. App. (2d), 545, 101 P. (2d), 747, 749; *Price* v. *Johnston Cotton Co. of Wendell,* 226 N. C., 758, 40 S. E. (2d), 344, 345; *Delaney* v. *Supreme Investment Co.,* 251 Wis., 374, 29 N. W. (2d), 754, 758.

In *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn., 126, 157 A., 860, 866, the eleventh and twelfth Atlantic Reporter headnotes are as follows:

''Where independent contractor's work is completed and accepted by owner, contractor is not liable to third persons for injuries subsequently suffered because of condition of work, even though he was negligent in carrying out contract.

''Where owner accepts independent contractor's work that is in dangerous condition and fails to make it safe and third person is injured, it is owner's negligence that is proximate cause of injury.''

In *Miller* v. *Davis & Averill, Inc.,* 137 N. J. Law, 671, 61 A. (2d), 253, the fourth Atlantic Reporter headnote is as follows:

''Generally, an independent contractor is not liable for injuries occurring to a third person after contractor has completed work and turned it over to owner or employer and it has been accepted by owner or em-

ployer, even though injury results from contractor's failure properly to carry out his contract, since, when work is finished by contractor and is accepted by employer, employer is substituted as the one responsible for existing defects."

In *Jones* v. *Beck* (Texas Civil Appeals), 109 S. W. (2d), 787, the third Southwestern Reporter headnote is as follows:

"Where excavation done by subcontractor had been accepted and construction of concrete forms had been commenced by another subcontractor, excavating subcontractor's liability to carpenter employed by general contractor, for negligence in excavating, ceased in absence of hidden defects."

In the case at bar, it is not alleged that there were any hidden defects in the excavation, known to the defendants and unknown to The Hoke Plumbing Company, or the plaintiff's decedent.

We come now to consider a case which is similar to the instant case on the facts. In *Walker* v. *McNichol Paving & Construction Co.*, 325 Pa., 267, 189 A., 673, 674, where a general contractor engaged to erect a building awarded a subcontract to the defendant to do excavation and work according to certain plans and specifications, and where the general contractors specified, "do not include any underpinning, caissons, shoring, sheet piling and/or pumping, as this work will be done by us or others employed by us," and where the defendant, eight days before the accident, had fully completed all excavation work as required under the contract without shoring, etc., and where the decedent was an employee of another subcontractor and was working when the wall of the earth and gravel above him caved in and he was crushed and killed as it slid into the excavation.

It is stated in the Atlantic Reporter headnote:

"Alleged duty of subcontractor whose contract in-

cluded excavation and backfill work and excluded shoring and underpinning work, to remedy dangerous condition of wall of excavation, as respects injury to employee of another subcontractor, ended when subcontractor transferred control and possession of wall to general contractor.''

In the opinion, on page 269, it is stated:

''At the close of the testimony the trial judge directed a verdict for defendant upon the ground that when the excavation at the south bank was completed and the work taken over by the general contractor, the defendant's liability with respect to the work was ended. The court below further held that the failure to shore as the excavation work progressed was not the proximate cause of the accident, but the cave-in of the bank was due to the negligence of the general contractor in failing to shore the wall promptly and properly after the excavation work was completed, and in permitting plaintiff and other workmen to assume places of danger in proximity thereto before the embankment had been made safe by proper shoring.''

On page 272, the court said:

''The unfortunate accident occurred not while defendant was excavating, but eight days thereafter. The proximate and sole cause of the accident was insufficient and inadequate shoring. The duty to shore the southern embankment was upon the general contractor and not upon this defendant. As we have pointed out, defendant's liability ended when the general contractor took over the work and proceeded to put in shoring as it had agreed to do.''

This question is presented in extended annotations found in 41 A. L. R., beginning at page 79, and in 123 A. L. R., beginning at page 1197.

In applying what we conceive to be the true principle of law to the facts construed most favorably to the plaintiff, we find that the defendants were not liable

for the death of the plaintiff's decedent, even though defendants had failed to slope, shore or brace the walls of the ditch, and that the cave-in which caused the death of plaintiff's decedent was caused by the failure to slope, shore or brace the walls of the ditch, for the reason that defendants had completed their work, the work had been accepted by the employer of plaintiff's decedent, and that the work was not abnormally dangerous so as to bring the case within the rule stated, and that the condition of the ditch was as readily observable by the decedent as by the defendants. In applying the correct rule of law to the facts in this case the trial court properly directed a verdict for the defendants.

*Judgment affirmed.*

MILLER and HORNBECK, JJ., concur.