Sidney BRUNENGRABER, Plaintiff,

v.

The FIRESTONE TIRE & RUBBER COMPANY, Defendant.

United States District Court
S. D. New York.

Feb. 7, 1963.

McGovern, Vincent & Connelly, New Rochelle, N. Y., for plaintiff; Harry G. Davidson, New Rochelle, N. Y., of counsel.

Baer, Marks, Friedman & Berliner, New York City, for defendant; William E. Friedman, New York City, of counsel.

McLEAN, District Judge.

This action was begun in the New York Supreme Court, Westchester County, and was removed by the defendant to this court. Plaintiff, a New York resident, seeks to recover from defendant, an Ohio corporation, damages for personal injuries, i. e., a fractured left kneecap, sustained by him when he tripped and fell over a jack handle in defendant's service station. For the most part the facts are not in dispute. I find them to be as follows:

Defendant occupies premises at 316 Huguenot Street, New Rochelle, New York. It uses part of the premises as a retail store for the sale of tires and automobile accessories, and part as an automobile service station. The two types of operation are carried on in separate sections of the building, which are connected by a door.

The physical layout of the premises is as follows:

As one stands on Huguenot Street facing the premises, the store area lies to the right, i. e., to the west, and the service station area is to the left, i. e., to the east. The service area contains five "bays" for automobiles. Going from west to east, the second, third and fifth bays have lifts to hoist automobiles, while the first and fourth bays do not. The bays are not partitioned one from another, but are merely portions of the floor area of the service station.

There are two continuous lines of fluorescent lights running across the ceiling of the service area from east to west. Each line has two fluorescent rods. A third line of fluorescent lights, partly shielded, is suspended above a work table

which runs the entire length of the back or south wall of the service area. The ceiling is approximately twenty feet high.

On the morning of Friday, February 26, 1960, plaintiff drove his automobile to defendant's premises for the purpose of having the car inspected, serviced and repaired, if necessary. Plaintiff was not a regular customer of defendant and had not been in the service station before. The car was driven into the second bay, facing the south, i. e., the rear, wall. Plaintiff entered the retail store. After a while defendant's manager, Quintilian, advised plaintiff that the mechanic had reported that plaintiff's brakes were defective. Quintilian invited plaintiff to go with him into the service area to look at the car.

Quintilian and plaintiff entered the service area through the door from the retail store on the west wall of the service area. There was a Cadillac car in the first bay facing the rear wall. They had to pass it in order to reach the plaintiff's car in the second bay. There is a dispute in the testimony as to the route which they took to reach plaintiff's car. Plaintiff testified that they walked east behind the rear of the Cadillac until they reached his car and then turned right and walked down the east side of the car to its front end. Quintilian and defendant's employee Pavletich testified that when Quintilian and plaintiff came out of the store they immediately turned right or south and walked to the south wall of the service area and then turned east and passed in front of the Cadillac to reach the front of plaintiff's car. I accept plaintiff's testimony on this point as more credible, since as will presently appear, if plaintiff had in fact walked in front of the Cadillac, he could not have failed to have observed the condition which ultimately led to his downfall and presumably the accident would never have happened.

The fluorescent lights were all on in the service area. On the west wall of the area was a sign reading "Customers are requested to wait in the TV Lounge." The TV Lounge is in the retail store.

Plaintiff saw the sign sometime before the accident.

When plaintiff and Quintilian reached the front of plaintiff's car, they met there one of defendant's employees named Rubenstein who had been working on the car's brakes. Quintilian advised plaintiff to have his brakes relined, but plaintiff decided that he would not have this work done at this time. Plaintiff did agree, however, to have one of the front tires changed and suggested that Rubenstein use the spare tire for that purpose.

Quintilian then returned to the retail store. Plaintiff remained near his car in the service area. After Rubenstein had removed plaintiff's spare tire from the trunk well in the rear of plaintiff's car, plaintiff noticed that there was debris in the empty well. He asked Rubenstein for a broom and a piece of cardboard on which he might sweep up the debris. Rubenstein provided him with a long-handled broom, not a whisk broom, and with a piece of cardboard approximately 10 by 14 inches in size.

Plaintiff swept the debris from the trunk well onto the cardboard where it made a pile approximately two inches in height. He then asked Rubenstein where he could dispose of the debris. Rubenstein told him that he could put it in a trash basket at the southwest corner of the service area.

Rubenstein did not specifically direct plaintiff how to reach that corner. Plaintiff had a choice of two routes. He could retrace the route by which he entered, i. e., (1) he could go west behind the rear of the Cadillac car until he reached the west wall of the service station and then south to the southwest corner at the back of the service station, or (2) he could go south past his own car and then west past the front of the Cadillac car to the southwest corner. If plaintiff had chosen the first alternative, the accident would not have occurred. Unfortunately he chose the second. He walked with the broom in his right hand and the cardboard in his left hand held straight in front of him in a position a few inches

above his belt. As he walked past the front of the Cadillac car, he was trying to balance the cardboard so that the debris would not fall off and he was looking generally in the direction of the southwest corner to locate the trash basket. He was not looking down at his feet. He tripped over a jack handle which protruded from under the front of the Cadillac car, fell to the floor and fractured his knee.

The jack was under the Cadillac because defendant's employee Pavletich a few minutes before had been changing a front tire on the Cadillac and had jacked up the front end of the car for that purpose. At the moment of the accident, Pavletich was at the rear of the Cadillac and hence did not observe plaintiff fall.

The distance from the front end of the Cadillac to the rear or south wall of the service station was approximately seven feet. The work bench protruded two feet from the south wall, thereby leaving a passage of five feet. The jack handle protruded from under the Cadillac car a distance of about two feet, so that there was only a space three feet wide through which plaintiff might have safely passed. The jack handle was about four inches off the floor. It was a dark color. I find, however, that the lighting was sufficiently bright to have enabled plaintiff to see it if he had looked at it.

■■ The duty owed by an owner of premises to one who is on them as a licensee is less than the duty owed to an invitee. It is necessary, therefore, to determine which label should be applied to plaintiff.

When plaintiff first arrived at defendant's premises as a customer, he was clearly an invitee. Customers, however, were expected as a general rule to remain in the retail store rather than the service area, as the sign indicated. But plaintiff was specifically requested by defendant's manager to enter the service area to inspect his car and to confer with the mechanic. Thus he was still an invitee when he first entered the service area for that purpose. Defendant contends, however, that after the discussion with the mechanic was concluded, plaintiff ceased to be an invitee, and when he chose to remain in the service area for his own private purpose of cleaning out the trunk of his car, and when he walked to the rear of the area to dispose of the debris, he was at best a licensee.

This contention agrees with the rule as stated by the text writers. Prosser, Law of Torts, 2d Ed. p. 458; 65 C.J.S. Negligence §§ 33, 34, 48, pp. 489, 490, 537.

There do not seem to be many cases in this jurisdiction on the point, but Bollinger v. Gotham Garage Co., 155 F. 2d 326 (2d Cir., 1946), cert. denied 329 U.S. 733, 67 S.Ct. 95, 91 L.Ed. 633 (1946), although not entirely similar to the present case on its facts, is authority for the proposition that one who was originally an invitee may lose his status as such if he strays for a purpose of his own into a portion of the premises different from that which he was invited to enter.

In my opinion plaintiff did so here, and hence his conduct brings him within the rule. I conclude that at the moment of the accident, which is the time as of which his status must be determined (Bollinger v. Gotham Garage Co., supra), plaintiff was only a licensee.

■ The nature of the duty owed to a licensee has frequently been discussed. In general, it may be said to be only a duty to refrain from willful or wanton injury and from setting a trap which would not be readily apparent to a reasonably careful person.

In Garthe v. Ruppert, 264 N.Y. 290, 190 N.E. 643 (1934), the court stated the rule as follows (264 N.Y. 290 at 294, 190 N.E. 643 at 645):

"Where a person goes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence,

for such person has taken all the risks upon himself. A person who makes use of the premises of another for his own convenience and without any sanction save the omission of the owner to forbid him from doing so, has no legal cause of complaint against the owner by reason of having blundered into some open and apparent danger."

In my view, a jack handle protruding from under an automobile in a service station is not a trap. It is an apparatus that anyone would normally expect to find there. This particular jack was in use for the purpose for which it was intended in a place in which that purpose was normally carried out. Cases involving unmarked trap doors, holes, caved-in floors, unlighted stairways and the like are not in point. On the contrary, the case seems analogous to Vaughan v. Transit Development Co., 222 N.Y. 79, 118 N.E. 219 (1917), in which recovery was denied to a licensee who was injured by stepping into a hole in a floor which had been temporarily left uncovered by plumbers who had been working on pipes. The fact that such work was in progress was evidenced by a ladder leaning against a wall nearby. The court said (222 N.Y. 79 at 84, 118 N.E. 219 at 220):

"Defendant rendered him a gratuitous service and owed him slight care. He was on the premises by sufferance. He had permission to be there merely because he had not been ordered off. Reciprocally, it was his duty actively to look out for himself, to observe the changed conditions, the ladder, the men at work, the opening in the floor. He was entitled to no greater notice than the doing of the work itself gave of what was being done. If he was incurious to the obvious, he was himself to blame."

So plaintiff here must have been aware that work was in progress in the service station, that tools of various sorts were in use, and that obstacles might well be in the path of anyone who walked about the area. The fact that plaintiff may not have known that someone had been working on the front tire of this particular Cadillac automobile a few moments before is immaterial. I conclude that defendant did not violate any duty which it owed to plaintiff as a licensee.

Although the case might be allowed to rest here, I am reluctant to place the decision solely upon the premise that plaintiff was a licensee. These categories are artificial, at best. It seems appropriate to say, therefore, that the result would not be different if a plaintiff were an invitee. In that case defendant would owe him a higher duty, i. e., to use due care under all the circumstances to keep the premises in a reasonably safe condition, so as not to unreasonably expose plaintiff to danger. Even in such a case, however, defendant would not be required to warn plaintiff expressly of a risk of which the nature of the business should already have made him aware.

Here again, Garthe v. Ruppert, supra, is in point. Plaintiff, an invitee, was injured by slipping on a wet floor in an employees' wash room in a brewery. Plaintiff knew that the employees' work required them to walk in wet and "mushy" places. He should have expected that they would track water and slippery substances into the wash room. In reversing a judgment for plaintiff and directing a dismissal of the complaint, the court said (264 N.Y. 290 at 295, 190 N.E. 643 at 645):

"Considering the nature of the business, the proximity of the toilet and the wash room to the yard, and the purpose for which these were used by the workmen, coupled with the fact that the plaintiff was familiar with the place and the use, and that the toilet was fully lighted and the condition of the floor apparent to any one using his eyes, we do not see wherein the defendant unnecessarily or unreasonably exposed the plaintiff to danger."

No purpose would be served by expanding this opinion by discussing in detail the many cases from various jurisdictions which the parties have cited in their briefs. Once the governing principle is clear, the decision of each case necessarily depends upon its own particular facts. The case which is closest to this one on its facts is O'Hanley v. Norwood, 315 Mass. 440, 53 N.E.2d 3 (1944). There plaintiff, an invitee in a service station, tripped over a jack handle which protruded from beneath an automobile. The service station employee had been using the jack to change a tire. The court affirmed a judgment for the defendant on the ground that the defendant was not negligent in failing to warn the plaintiff of the presence of the jack handle or in leaving the handle unguarded. The court said (53 N.E.2d 3 at 4):

> "There is no duty upon a landowner to warn a business visitor of dangers, knowledge of which the landowner may reasonably assume the visitor has."

I conclude that defendant did not violate any duty owed by it to plaintiff, even if it be assumed that at the moment of the accident plaintiff was an invitee.

█ It must also be said that, in walking as he did through a crowded service station which was unfamiliar territory for him, balancing his burden and his broom and keeping his eyes on the distant objective instead of on the floor immediately beneath him, plaintiff failed to use due care for his own safety. Cf. Hudson v. Church of the Holy Trinity, 250 N.Y. 513, 166 N.E. 306 (1929); Robinson v. C. & J. Piskosh, Inc., 259 App.Div. 544, 19 N.Y.S.2d 940 (1st Dept. 1940).

As trier of the facts upon all the evidence I conclude that defendant was not negligent. I conclude further that plaintiff was negligent and that his negligence caused his accident.

Pursuant to Rule 52(a), this opinion constitutes the court's findings of fact and conclusions of law.

Defendant's motion to dismiss the complaint made at the close of the entire case is granted. The Clerk is directed to enter judgment in favor of defendant. So ordered.