Daniel **PASSANTINO**, Plaintiff,

v.

**STATES MARINE LINES, INC.,**
**Defendant.**

No. 64 Ad. 1063.

United States District Court
S. D. New York.

April 10, 1969.

Max D. Krongold, by Ezekiel Jasper, New York City, for plaintiff.

Dorsey Burke & Griffin, by Louis G. Juliano and James F. Hart, New York City, for defendant.

CANNELLA, District Judge.

Action by the plaintiff for money damages for injuries allegedly caused by the negligence of the defendant and the unseaworthiness of its vessel, the S. S. Sooner State. At the time of his injury, the plaintiff, employed as a cargo checker by Isthmian Lines, Inc., was aboard the vessel. The Court finds that the plaintiff has failed to establish, by the preponderance of the credible evidence, that the defendant was negligent or that any unseaworthy condition existed aboard the S. S. Sooner State which was the proximate cause of his injuries. Judgment for the defendant.

The Court finds that it has jurisdiction over this action by virtue of the provisions of the general maritime law. 28 U.S.C. § 1333(1).

The majority of the facts which are relevant to the Court's determination have either been stipulated to by the parties or are not in dispute. Plaintiff, a cargo checker, was instructed by his Isthmian Line superiors to board the S. S. Sooner State on May 11, 1964. He was told to check a heavy lift which was to come off a lighter on the starboard, or off-shore side, of the vessel into #5 hatch. The lift was on a hook and would be swung aboard to be loaded. Plaintiff was to note the weight of this piece of cargo, its measurements, the port of discharge and the head marked on each case. Plaintiff indicated that he went onto the vessel at approximately 9:30 A. M. He ascended the gangplank on the port side and went up to the next deck near the wheelhouse located amidships. The trip to this next deck was made by ladder on the port side of the vessel, alongside the wheelhouse. After proceeding to the after end of the wheelhouse, plaintiff skipped over the railing there and jumped down about two feet onto some cargo loaded on deck. Plaintiff walked along on top of the deck cargo for about one to five minutes [1] until he fell through a space between two porta-camps or skids of buildings near #4 hatch. Plaintiff was removed from the ship and transported to a hospital for treatment of his injuries. [2]

Plaintiff testified that at the time he was walking toward the after end of the vessel, on top of the deck cargo, he was looking upward at the lift being swung aboard. Despite the fact that he was not looking ahead of him as he walked, he kept walking. [3] He stated, and the Court finds, that in going from #3 hatch toward the after end, his eyes were riveted upon the Merritt-Chapman boom lifting the heavy cargo on board, that he kept looking at the cargo in the sling, kept walking during this time and finally fell into the space between the porta-camps. Plaintiff also stated that he did not trip over anything which could have precipitated his fall and that he was carrying his papers with him. These papers were his tally sheets, upon which the plaintiff would place the necessary information after checking the cargo.

---

1. A distance of from 45 to 60 feet. Cf. Defendant's Exhibit C(3).

2. No discussion of plaintiff's injuries will be undertaken in this opinion as their nature and extent bear no relevance to the question of liability.

3. Plaintiff testified that he had not been aboard the S. S. Sooner State either the day before the accident or prior to his 9:30 A.M. entry on May 11, 1964.

From the testimony of Alfred Schadtzle, the pier superintendent the day of the accident, the Court finds that there were two porta-camps stowed on the offshore side of the Sooner State with a space between them through which the plaintiff fell.[4] While the plaintiff indicated that the space between these buildings was about 18 inches, the Court finds that due to their construction, described by Schadtzle, the space was close to 30 inches. A hatch foreman, Leonard DeFazio, testified that he was standing on one of the porta-camps near #5 hatch when he heard plaintiff scream while falling into the space. DeFazio stated that he ascended the porta-camp, from which he was viewing his gang, by use of a ladder, and that he had arrived at #5 hatch by using a walkway along the deck of the vessel.[5] DeFazio noted that he could see the space between the porta-camps from approximately 20 feet away.

■■■ Plaintiff contends that the S. S. Sooner State was unseaworthy at the time of his accident due to the manner in which the deck cargo, particularly the porta-camps, was stowed. In more precise terms, the claim is that the porta-camps should have been stowed flush against each other and the failure to do so created an unseaworthy condition. The shipowner has no obligation to furnish an accident-free ship. He has " * * * a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness * * *." [6] While it is true that improper stowage of cargo may create an unseaworthy condition and breach the shipowner's warranty of seaworthiness,[7] the basic focus must be on the "reasonable fitness" test of Mitchell. The question is whether the appurtenances of the vessel at issue in the case at bar are " 'within the usual and customary standards' of comparable maritime activity" [8] and this test is essentially a pragmatic one.[9] It is clear to the Court that the stowage of the porta-camps was within the applicable standards of the trade, and, most importantly, was apparently the only way in which they could have been stowed. The bottom of the steel frame of a porta-camp extends from 12–15 inches and thus if two of these items are stowed in juxtaposition, there will perforce be a space between them of up to 30 inches. The Court finds that this conformed with the customary method of stowage and thus that the S. S. Sooner State was reasonably fit.[10] The Court finds that the manner of stowage of the porta-camps did not create an unseaworthy

---

4. The Court has also examined Defendant's Exhibit B, a cargo plan of the S. S. Sooner State showing the plan for stowage of these porta-camps.

5. DeFazio's testimony about a prior crossing of the "vans" similar to plaintiff's is quite confusing. The Court does not find that he made the same journey as plaintiff, but that from his position on top of the porta-camp he could see the space through which plaintiff fell. The walkway used by DeFazio is depicted in Defendant's Exhibit C(1), a photograph of the scene admitted in evidence.

6. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). See also Blier v. United States Lines Company, 286 F.2d 920 (2d Cir.), cert. denied 368 U.S. 836, 82 S.Ct. 32, 7 L.Ed.2d 37 (1961); Grillea v. United States, 232 F.2d 919 (2d Cir. 1956).

7. Nuzzo v. Rederi, A/S Wallenco, Stockholm, Sweden, 304 F.2d 506 (2d Cir. 1962).

8. Nuzzo v. Rederi A/S Wallenco, Stockholm, Sweden, supra at 510.

9. Poignant v. United States, 225 F.2d 595 (2d Cir. 1955) cited with approval in Nuzzo v. Rederi A/S Wallenco, Stockholm, Sweden, supra 304 F.2d at 512.

10. This is not a matter of blind approval of an otherwise hazardous industry standard. See Nuzzo v. Rederi A/S Wallenco, Stockholm, Sweden, supra (Clark, J., dissent). The Court has considered the evidence presented and does not find that the customary stowage of porta-camps in the industry is so pernicious that it should be struck down.

condition [11] and that "there was no concealed defect, indeed no condition * * which, because of its propensity to cause injury, was *obviously* at variance with general maritime practice." (Emphasis in original).[12]

■■ The thrust of plaintiff's allegation that the defendant was negligent is that the shipowner failed to provide him with a reasonably safe place to work. This obligation extends to those parts of a ship where an employee, either the ship's or a stevedore's, may *reasonably* be expected to go.[13] The question before the Court is whether the top of these porta-camps was "part of his place of work."[14] The Court finds that plaintiff was not "required" to be on top of this deck cargo to perform his duties. There is no evidence in the record which would support such a contention. A contrary finding certainly has more to sustain it. There was an apparently safe walkway by which plaintiff could have arrived at his station near hatch #5 [15] and there is clear testimony that there was more than a sufficient amount of room near #5 hatch from which plaintiff could have made his necessary observations.[16] Plaintiff's contention that he had to be on top of the vans to do his checking of the heavy lift is totally without foundation. Considering all the

facts and circumstances presented, the Court finds that the defendant could not reasonably anticipate that the top of the porta-camps was a place aboard the vessel where the plaintiff could reasonably be expected to go, nor that he had to stand on top of one of these skids to perform his job. The Court must conclude that the defendant was not negligent and that plaintiff's use of the porta-camps was not proper. The area of plaintiff's accident was not "part of his place of work." [17]

■■ The Court finds that the accident suffered by the plaintiff and the resulting injuries were caused solely by his own negligence. He did not make reasonable use of his senses and intelligence to discover dangers to which he was or might be exposed. Plaintiff's testimony is clear. He proceeded along an unknown path with reckless disregard for his own safety. He admitted that he kept his eyes on the distant target of the heavy lift and kept walking along the top of the porta-camps without any concern for potential dangers nearby. He quite simply failed to use due care for his own health and well-being and his negligence did not merely contribute to the accident, but it was its sole cause. The Court is aware that the principles of comparative negligence are applicable in cases of

11. The mere absence of dunnage over the space between the porta-camps does not establish unseaworthiness. *Cf.*, Boutte v. M/V Malay Maru, 370 F.2d 906 (5th Cir. 1967).

12. Nuzzo v. Rederi A/S Wallenco, Stockholm, Sweden, *supra*, 304 F.2d at 510.

13. Lauricella v. United States, 185 F.2d 327 (2d Cir. 1950).

14. Calderola v. Cunard Steamship Company, 279 F.2d 475, 477 (2d Cir.), cert. denied sub nom. Cunard Steamship Co., Ltd., v. John T. Clark & Son, 364 U.S. 884, 81 S.Ct. 172, 5 L.Ed.2d 104 (1960).

15. See Defendant's Exhibit C(1). The boards on top of the porta-camps are caps for lashings and were not placed there for use as a catwalk. No catwalk was installed on the porta-camps; catwalks were present over or adjacent to the deck cargo. There is no evidence

that the top of the porta-camps was generally being used as a walkway by other workmen.

16. The record shows that the well near #5 hatch was clear and plaintiff could have stood there to check the cargo.

17. See Note 13, *supra*. This is certainly not a case where it is obvious that plaintiff was required to be in the vicinity of his accident. *See e. g.*, Tedeschi v. Luckenbach Steamship Co., 324 F.2d 628 (2d Cir. 1963). Plaintiff has provided the Court with only one case in support of its position. Alexander v. Meiji Kaiun K.K., 195 F.Supp. 831 (E.D.La.1961), aff'd sub nom, Strachan Shipping Co., v. Alexander, 311 F.2d 385 (5th Cir. 1962). The case is clearly distinguishable for there the plaintiff was patently required to perform his work in the hold where the accident happened.

this nature,[18] but finds that there is no negligence or unseaworthiness on the part of the defendant with which to weigh plaintiff's own lack of care.[19] Plaintiff's negligence was the sole proximate cause of this accident.

All motions on which the Court reserved decision at the time of trial are denied. Judgment shall be entered for the defendant.

The above shall constitute the Court's findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

So ordered.

---

18. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

19. *See* Brunengraber v. Firestone Tire & Rubber Co., 214 F.Supp. 420 (S.D.N.Y. 1963).