CHARLES M. BENNETT, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Appellant.

NEGLIGENCE — FAILURE OF RAILROAD COMPANY TO PROVIDE LOCK OR TARGET FOR A SWITCH USED IN CONSTRUCTION. A railroad company which proves by uncontradicted evidence that a certain switch, provided for temporary use in the construction of a road, had performed its work perfectly during several months in which it had been in operation; that it was a perfect switch of the standard variety used in construction work, and that it was not customary to lock such switches or provide them with signals or targets visible at a distance, is not liable, for its failure to lock or target the switch, to an employee who was injured by jumping from a caboose on the main track, in which he was riding to his work, in order to avoid an impending collision with a flat car on the switch track, caused by the fact that the switch, after having been properly closed, had been opened in the night by some unknown human agency, since the master's duty to his servants does not require him to furnish the best known appliances, but such only as are reasonably safe.

*Bennett* v. *Long Island R. R. Co.*, 21 App. Div. 25, reversed.

(Argued March 22, 1900; decided May 1, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 18, 1897, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

1

*William J. Kelly* for appellant. The complaint should have been dismissed at the close of the plaintiff's case, as no negligence had been proved against defendant. (*De Vau* v. *P. & N. Y. C. & R. R. Co.*, 130 N. Y. 632; *Kern* v. *De C. & D. S. R. Co.*, 125 N. Y. 50; *Harley* v. *B. C. M. Co.*, 142 N. Y. 31; *Haskins* v. *N. Y. C. & H. R. R. R. Co.*, 79 Hun, 159; *McNeil* v. *N. Y., L. E. & W. R. R. Co.*, 71 Hun, 24; *Brick* v. *R., N. Y. & P. R. R. Co.*, 98 N. Y. 213; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77; *Appel* v. *B., N. Y. & P. R. R. Co.*, 111 N. Y. 550; *Burke* v. *Witherbee*, 98 N. Y. 562.) On the whole case, plaintiff was not entitled to go to the jury. (*Sweeney* v. *B. & J. E. Co.*, 101 N. Y. 520; *De Forest* v. *Jewett*, 88 N. Y. 264; *Stringham* v. *Hilton*, 111 N. Y. 188.)

*George C. Case* for respondent. It was the duty of the defendant to provide safe cars, locomotives, roadbed, switches, etc., for the employees engaged in operating the train and those riding as employees or passengers to their work. (*Burke* v. *Witherbee*, 98 N. Y. 562.) It was the duty of the defendant to supply the switch at the siding with a lock and signal. (*Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 566.) The court committed no error in submitting the case to the jury. (16 Am. & Eng. Ency. of Law, 465, 466.)

PARKER, Ch. J. The defendant, while building an extension to its railroad of about ten miles in length, put in for temporary use a switch without either lock or target, and by means of that switch, while open, a caboose propelled by an engine was run at considerable speed into a flat car loaded with rails standing on the side track. The plaintiff, an employee of the defendant, was, with a number of other employees, in the caboose *en route* to the point where they were to begin the labors of the day, and discovering that a collision was imminent, he jumped, receiving injuries to the right arm, for which damages have been awarded to him by the judgment now under review. The switch had been in

use for a number of months, was perfect of its kind, and when the engine and caboose passed by it the night before the accident the switch was closed, and had it not been opened by human agency between that time and the return of the engine and caboose the next morning, the accident could not have happened. Neither passenger nor freight trains had been run over this track down to this time, nor were they so run for several months thereafter, and no engine was run over this road in the time intervening the passing of this engine and caboose at night and their return in the morning. There was some evidence of threats of mischief by one or more Italians who had formerly been employed in the construction of the road, and of the close proximity of one of them at the time of the accident, and while there was not sufficient evidence to require a finding that the switch had been thrown open by one of them, the fact was conclusively established that there was no defect in the switch and that it required a man to open it. Therefore, it must have been opened either by a fellow-servant or by an outsider, and in either event the defendant is not liable to respond to this plaintiff for the results of such an act, because in the former case it was the act of a co-employee; in the latter, the felonious act of a third party.. The Penal Code makes an interference with a switch by a third party a felony. (Section 636.) The learned trial justice correctly charged the jury as to these propositions and with his conception of the law the Appellate Division agreed. The questions submitted to the jury were whether defendant should have provided a lock for the switch " for the purpose of securing it against trespassers who might inadvertently throw it out of place or prevent temptation to persons maliciously minded, who might find it so easy to turn the switch, by having it secured, to make it more difficult," and also " Whether or not it was its duty to have provided a signal called a target, so that an approaching construction train could have seen it at a distance so far that they could have stopped the train in time to prevent the accident," and in effect that an affirmative finding would establish the liability of the

defendant to respond to the plaintiff in damages. The prevailing opinion at the Appellate Division agreed with this view of the law and justified the trial court upon those grounds only in refusing to dismiss the complaint and submitting the case to the jury.

When the plaintiff rested he had proved the character of the switch, that it was closed the night before and open at the moment of the accident, and that it was without lock or target, but had not offered any evidence tending to show that it was customary to either lock or place targets on switches made use of during the construction of railroads. The motion for nonsuit having been denied, the defendant proceeded to introduce evidence tending to show that the switch actually used was such as is ordinarily used during the construction of railroads and that during constructions switches are never locked and never targeted. William A. Cattell, formerly assistant chief engineer on defendant's railroad, testified that the siding in question was put in for temporary use during the construction of the railroad, and further that during his twelve years' experience on various railroads, in which he had much familiarity with construction work, he did not think he had ever seen a locked switch on a construction track and targets very seldom, if ever. The assistant engineer on the New York division of the Pennsylvania railroad testified that he had had eighteen years of experience on various railroads, was familiar with construction work on new railroads and had never seen a switch locked on tracks in process of construction nor had he ever seen targets on such switches, and of this particular switch he said it was of the regular standard variety of switch found on construction work and that it was not customary to lock or target such switches during the process of construction. No witness was called who attempted to contradict the testimony given by these witnesses. At the close of the trial, therefore, the uncontradicted testimony showed that the switch in use had not only performed its work perfectly during the months that it had been in operation and was a perfect switch of its kind, but further that the

switch was of the standard variety found on construction work
and that it was not customary either to lock or target such
switches.   The question, therefore, was presented to the court
on a motion for a nonsuit, whether the jury could be permit-
ted to say, notwithstanding this evidence, that the defendant
failed in the duty which it owed to its employees in not pro-
viding the switch with a lock, or target, or both.   The rule
of law is that the master's duty to his servants does not require
him to furnish the best-known appliances, but such only as
are reasonably safe, and the test by which to determine
whether he has performed that duty is not satisfied by an
answer to the inquiry whether better appliances might have
been obtained, but whether the selection made was reasonably
prudent and careful.   (*Stringham* v. *Hilton*, 111 N. Y. 195;
*Kern* v. *De Castro, etc., Co.*, 125 N. Y. 50; *De Vau* v. *Penn-
sylvania & N. Y. C. & R. R. Co.*, 130 N. Y. 632; *Harley* v.
*B. C. M. Co.*, 142 N. Y. 31.)   Applying the test prescribed
by the cases above cited to the evidence presented by this
record for the purpose of determining whether this defendant
as master discharged its full duty, the result is necessarily
reached that this defendant fully performed its obligation to
its employees engaged in the construction of its road when it
made selection of this particular switch without putting on it
either a lock or target.   True, it might have made use of one
or both of these appliances; but, according to the record, the
switch selected was such as is generally and efficiently used on
construction work by other railroads, and, hence, in making
selection of it the defendant acted with reasonable care and
prudence.   The best-known appliance for completed railroads
that are in actual operation is a switch with a lock and a target,
but the defendant was not called upon during the construction
of this road to do more than to furnish a switch that was reason-
ably safe.

In *Brick* v. *Rochester, N. Y. & P. R. R. Co.* (98 N. Y.
211) this court had before it a case where the plaintiff's intes-
tate lost his life while riding upon a construction train over
a dilapidated railroad which the defendant was engaged in

reconstructing, and, in denying the plaintiff's right to recover, the court asserted the general principle that it is the duty of the master to provide and maintain for the use of his employees suitable machinery and other instrumentalities for the perform- ance of the duties enjoined upon them, and within that princi- ple is generally included the duty of a railroad to provide a track sufficient for the purpose in view and to maintain it in good order ; but the court further said that while this principle is generally applicable to railroads which are in a state of comple- tion, it must be considered with some qualification in reference to a road which has become dilapidated and out of repair and is in the process of being reconstructed.   It may be assumed, we think, that the deceased, in performing the services in which he was engaged, and in traveling on the construction train, understood that he was not working upon a road that was finished and in good repair, but upon one which having been long neglected and little traveled, latterly only by con- struction trains, subjected him to greater risks and perils than would be incurred under ordinary circumstances, and in enter- ing defendant's service he assumed hazards incident to the same.   The reasoning in that case is as applicable generally to the construction of a railroad as to its reconstruction.   The master who, while constructing a railroad, makes use of such appliances as the experience of others engaged in similar work has shown to be sufficient and reasonably safe, performs his duty ; therefore, this defendant performed its duty in selecting and using the switch in question ; for, according to the evidence contained in this record, it selected the kind of switch that had been in use on other railroads during con- struction, a switch that had stood the practical test of user for so long a time that it had become the custom to use it without either lock or target during the period of construction by rail- roads generally, and particularly by all those with which the witnesses had become familiar during their long and varied experience in railroad building.   The record, therefore, was barren of any evidence authorizing a jury to find that in selecting this switch for use during construction, without.

either lock or target, the defendant acted unreasonably or imprudently, and, therefore, the motion to dismiss the complaint should have been granted.

. The judgment should be reversed and a new trial granted, with costs to abide the event.

GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur; CULLEN, J., not sitting.

Judgment reversed, etc.