**LEE et al. v. PENNSYLVANIA R. CO.**

**No. 39, Docket 22073.**

United States Court of Appeals
Second Circuit.

Submitted Oct. 2, 1951.

Decided Oct. 30, 1951.

Frederick Mellor, of New York City (Joseph S. McCann, of New York City, of counsel), for defendant-appellant.

Samuel Leigh, of New York City (Joseph H. Sand, of New York City, and Bernard Meyerson, of Brooklyn, N. Y., of counsel), for plaintiffs-appellees.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a judgment on a jury verdict for plaintiffs in an action arising out of injuries sustained by Jerome Linwood Lee, a child of three, while riding an escalator in defendant Pennsylvania Railroad's station in New York City. The plaintiffs are the child himself, suing by his mother, Charlotte Lee, as guardian *ad litem,* and Mrs. Lee, who sues to recover medical expenses and loss of potential services during minority.

The basic facts giving rise to the action are simple and relatively undisputed by either party. During the evening of August 9, 1949, the plaintiff Charlotte Lee, who is blind, entered defendant's station to buy tickets and board the train for Baltimore. She was accompanied by her niece, Victoria White, who was nineteen years old, and by her sons, Calvin, aged 10, and Jerome, together with a nephew, Albert, aged 9, and an infant daughter. While the two ladies were waiting in line for the tickets, the three boys went off to look for

the water fountain, and, advised by some passer-by that it was to be found on the level above that on which the ticket windows were located, went on the escalator. The only witnesses to the accident who testified as to this fateful ride were the two older boys. It appears from their evidence that little Jerome stood on the same step of the escalator as his brother, and in front of him. Albert, the cousin, rode one or two steps behind. Somehow—and here the evidence was unclear as to whether it was due to the chance jostling of other passengers or because of the carelessness of the youthful plaintiff—Jerome fell as the escalator was approaching the upper level of the station and his hand became wedged in the space between the stationary combing extending out from the floor proper and the moving treads on which he was standing. The injuries he sustained necessitated the amputation of his middle finger and scarred another on one hand.

In their case in chief, the plaintiffs adduced evidence as to negligence by the defendant in two respects: (1) improper policing of the escalator to prevent the danger which might stem from a crowded condition there, and (2) negligent maintenance of the escalator, in that, specifically, the openings between the treads and the combing were larger than necessary and that the dangers thus inherent in it were magnified by a bent tooth of the combing at one point. After a trial the jury returned a verdict of $6,000 for the infant plaintiff and $1,500 for his mother, and from the judgment entered upon the verdict the defendant appealed.

The defendant's first contention, that the evidence was insufficient to sustain the jury's verdict, is without legal merit. We may concede that plaintiffs have erected a rather shaky edifice of actual negligence upon the shifting sands of carelessness inferred from the naked accident. Their evidence of crowding and pushing on the escalator, for instance, is to be culled from the hazy and obviously rehearsed testimony recited by the two young boys and from that of Victoria. Each, it is true, spoke in terms of "a big crowd," "they began to shove," "crowd of people," "the crowd of people started pushing," "a big bunch of people," "looked like hundreds of people still trying to get on," "they began to shove as we got near the top," and so on. All this does not demonstrate just how the ill-defined crowd actually caused the plaintiff to fall. Nor can we say that the evidence of negligent care of the escalator was more convincing. Calvin stated that when he pulled Jerome's hand "out in between the escalators * * * one part had a little small opening and the other one was crooked," and later defended his statement by saying, "There would have been no other way that he could have gotten his hand in if it hadn't been crooked." Plaintiffs' expert witness testified that the spaces between the tread and combing were wider than necessary. And this was buttressed by some inconclusive photographs of that part of the escalator which seem to indicate that one of the teeth of the combing was somewhat out of alignment, thus permitting a larger aperture than was originally intended.

But we are asked not only to agree that such evidence is indirect and requires a broad bridge of inference to permit the conclusion of actual negligence, White v. Lehigh Valley R. Co., 220 N.Y. 131, 115 N.E. 439, but to say also that it lacked sufficient substance to go to the jury. With the first contention we are in accord; with the second we cannot agree. Such issues are particularly within the realm of the jury. It is their function to decide the question of negligence and to this end they must weigh the witnesses' credibility and the reasonableness of the inferences which they are asked to make. As we have had occasion to point out several times, e. g., Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, recent Supreme Court cases have emphasized this function of the jury and reversed attempts to constrict it. Here plaintiffs made out a *prima facie* case of negligence, and hence the trial judge did not err in submitting the case to the jury.

We are not called upon to discuss the subordinate question of the sufficiency by itself of the evidence as to the policing of the escalator to prevent crowding. The

District Court permitted the jury to weigh this allegation, as well as the ground of negligent maintenance of the equipment, under the general statement that "the defendant owed them [plaintiffs] a duty * * * to use reasonable care to make their premises reasonably safe," which he characterized as a "doctrine * * * for the protection of its customers or passengers or people." At no time did defendant question this form of submission of the two charges jointly by any separate attack upon one of those grounds or request for separate verdicts or otherwise. Thus while this charge of negligence alone may not have presented a jury issue, the problem is not before us. A general verdict is upheld where there is substantial evidence supporting any ground of recovery in favor of an appellee. Cross v. Ryan, 7 Cir., 124 F. 2d 883, certiorari denied Ryan v. Cross, 316 U.S. 682, 62 S.Ct. 1269, 86 L.Ed. 1755; Kinser v. Riss & Co., 7 Cir., 177 F.2d 316. The situation is otherwise where timely objection has been made to the submission of a ground inadequately supported along with one duly supported by the evidence. But to preserve such a contention for the consideration of the appellate tribunal, the matter must be specifically called to the attention of the trial judge in order that he may have the opportunity to consider the asserted insufficiency as to one specification and correct himself, if necessary, by removing it from the jury's consideration. Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923; Alaska Pacific Salmon Co. v. Reynolds Metals Co., 2 Cir., 163 F.2d 643.

Defendant's second contention of reversible error arises out of the cross-examination of its expert witness, one Claypool, who, as an engineer employed by the Otis Elevator Company, testified on direct as to the construction of escalators made by his employer. Stating that this escalator had probably been installed in 1938, he went on to point out the construction of the combing area and to give the measurements between the teeth—⅜ths of an inch—distances which he said could not be reduced on this type of installation. On cross-examination, plaintiffs' counsel elicited information as to improvements in Otis escalators, and then, over the objections of defendant, induced the witness to testify that in 1946 Otis manufactured a type of escalator with narrower treads than those on the one in defendant's station—separated in fact only ¼th of an inch. Defendant objects to the admission of this evidence in cross-examination.

New York has adopted the generally honored rule that testimony of the practices of others may be adduced in order, to place an allegation of negligence in a context of general usage, thus assisting the jury in formulating the standard of care of reasonable men. This rule is available to plaintiffs to show departure from and defendants to show adherence to an accepted standard. Shannahan v. Empire Engineering Corp., 204 N.Y. 543, 98 N.E. 9, 44 L.R.A.,N.S., 1185; Gardner v. Friederich, 25 App.Div. 521, 49 N.Y.S. 1077, affirmed 163 N.Y. 568, 57 N.E. 1110; Lerner v. Sears, Roebuck & Co., 274 App.Div. 905, 83 N.Y.S.2d 59. But such custom or usage, when shown, is not conclusive on the issue of negligence. Saglimbeni v. West End Brewing Co., 274 App.Div. 201, 80 N.Y.S.2d 635, affirmed 298 N.Y. 875, 84 N.E.2d 638; Radin v. State, 192 Misc. 247, 80 N.Y.S.2d 189. Nor is the rule to be warped into a requirement that the defendant use the latest or safest equipment. Bennett v. Long Island R. Co., 163 N.Y. 1, 57 N.E. 79; Harley v. Buffalo Car Mfg. Co., 142 N.Y. 31, 36 N.E. 813.

The question presented by this case, however, is whether or not admission of evidence of the safest practices invariably constitutes reversible error. Defendant cites Garthe v. Ruppert, 264 N.Y. 290, 190 N.E. 643, to this effect. There the court, reversing on other grounds, held incompetent evidence that another brewery had installed a more efficient method of disposing of the wet grain mash whose slipperiness on defendant's floor had caused plaintiff's fall. Although the court there repeats the admonition that there is no obligation to use the best and latest equip-

ment, it appears that the real harm lay in the fact that plaintiff's evidence alluded to the practice of only one other brewery,[1] and that there was no effort in the evidence to generalize from this to any widely accepted practices.

We think therefore that the evidence here was admissible, followed as it was by a specific charge made at the end of the general instructions by the judge that the defendant was not obliged "to have the best equipment or the safest place, but only such as are reasonably safe and appropriate for the business." There is no question but that safer and better practices can be shown in evidence if it is accompanied by a charge that such does not control the issue of negligence. Rothstein v. Monette, City Ct., N. Y., 17 N.Y.S.2d 369, 373; Bennett v. Long Island R. Co., 163 N.Y. 1, 57 N.E. 79. Here a charge to that effect was the last thing the jury heard before they began their deliberations. Garthe v. Ruppert, 264 N.Y. 290, 190 N.E. 643, merely declares evidence of an isolated example of more careful practice incompetent as proof of a generally accepted higher standard. Therefore it does not cover this case. Here evidence was of a substantially more generalized nature, for it referred to a type of escalator which, in addition to being the standard piece of equipment offered by the largest manufacturer in the field, for three years prior to the accident had been adopted and installed widely through the country. True, the Pennsylvania Railroad Company is not obliged to install a new escalator every time Otis changes its latest model. But the jury was warned that it was not to construe the evidence in this fashion. Thus it was not error to admit the testimony as to such generally accepted equipment of a later time than that on which the injury occurred merely because such equipment happened to be safer than defendant's model.

Judgment affirmed.

[1]. "Never, however, has it been permitted to take one or two instances as a gauge or guide in place of the custom of the

trade." Garthe v. Ruppert, 264 N.Y. 290, 296, 190 N.E. 643, 646.