FRANK JOKELSON, an Infant, by His Guardian ad Litem SAMUEL JOKELSON, et al., Respondents-Appellants, *v.* ALLIED STORES CORP., Doing Business as STERN BROS., Appellant, and OTIS ELEVATOR Co., Respondent.

First Department, December 17, 1968.

*Jacob D. Fuchsberg* of counsel (*Irving Lemov* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for respondents-appellants.

*Denis M. Hurley* of counsel (*John F. Haggerty* with him on the brief; *Fogarty & Nielsen,* attorneys), for appellant.

*William F. McNulty* of counsel (*Hampton & Dietel,* attorneys), for respondent.

McNALLY, J.  This is an appeal by defendant-appellant, Allied Stores Corp., doing business as Stern Bros., from a judgment entered on a 10-to-2 jury verdict for an infant plaintiff in the sum of $237,500 and in favor of his father in the sum of $35,200.

Plaintiffs' amended complaint alleges the infant plaintiff was injured on December 27, 1961, when he was " caused to be thrown and to fall " on an escalator in Stern's Department Store at 42nd Street in Manhattan.  The claimed negligence of Stern consisted of allowing large and unruly crowds on the escalator without adequate supervision, in failing to provide guards and safeguards, and in maintaining the escalator in such a condition that the infant plaintiff's fingers could be engaged in the mechanism of the escalator.

Defendant-respondent Otis Elevator Co. was charged with the negligent manufacture, installation, inspection, testing, repairing and maintenance of the escalator and other negligence. At the close of the evidence, the court dismissed the complaint against Otis, and following the rendition of the verdict the court by stipulation determined the issues raised by the cross complaint of Stern against Otis and dismissed the cross complaint.  We are in accord with this holding.

On December 27, 1961, the infant plaintiff, then almost 8 years of age, standing on appellant's down escalator proceeding from the second to the main floor, was caused to fall.  His hands came in contact with the stair treads and combing on the main floor and his fingers became wedged between the treads and

the combing, resulting in partial amputation of three fingers of his right hand and one finger of his left hand.

Two bases of liability were submitted to the jury — overcrowding and faulty maintenance. The record fails to establish overcrowding and it is wholly devoid of proof of crowding on the steps of the escalator. The infant plaintiff testified he felt a '' bump '' and '' fell ''; his friend testified a person '' came running past   *   *   *   knocked into Frankie and Frankie lost his balance.'' Viewed in the most favorable light, the proof is the boy's fall was caused by the carelessness of a third person. (*Ryan* v. *City of New York*, 7 A D 2d 298, affd. 6 N Y 2d 896.) There was no proof of the presence of a crowd which was unruly or unmanageable, or that the infant plaintiff's freedom of movement was unduly restricted. When he was pushed by an unidentified person, the 3 or 5 steps ahead of him were free of people; his fall was free, unobstructed and unimpeded. The case should not have been put to the jury on this theory. (*Williams* v. *New York R. T. Corp.*, 272 N. Y. 366; *McKinney* v. *New York Cons. R.R. Co.*, 230 N. Y. 194; *Cross* v. *Murray*, 260 App. Div. 1030.) Counsel for appellant moved for a dismissal of the complaint and for a directed verdict on each aspect of the alleged negligence in the case, both at the close of plaintiffs' case and at the close of the entire case. (*Lee* v. *Pennsylvania R. R. Co.* (192 F. 2d 226) cited and quoted in the dissent, did not decide the issue of overcrowding since defendant failed to object to the submission of that issue to the jury. The court there said (p. 229): '' Thus while this charge [overcrowding] may not have presented a jury issue, the problem is not before us.''

The primary question remaining is whether this escalator was a dangerous instrumentality. The test of this is whether a person of reasonable prudence would regard it as a potential source of accident or injury. The proof that from $3\frac{1}{2}$ to 4 million people travelled over the same escalator every year in safety would seem to indicate that reasonable prudence would not regard it as dangerous. In that period of time there was one accident, involving a 21-month-old infant on the fourth floor, with no proof that it was caused by any defect in the escalator.

There was prejudicial error in the admission of evidence on alleged faulty maintenance which requires reversal. The claim of faulty maintenance is grounded wholly on appellant's failure to exercise the standard of care measured by the alleged custom and usage relative to the installation of escalators with $\frac{1}{4}$-inch tread separations. Appellant's escalator, installed in May, 1937, had $\frac{1}{2}$-inch tread separations. Section

C26–1161.0 of the Administrative Code of the City of New York, effective in December, 1951, requires each slot of the surface tread to be not more than ¼-inch wide. However, the statute excludes its application to installations prior to January 1, 1938. Installations subsequent to December, 1951 are responsive to section C26–1161.0. Plaintiffs' proof of custom and usage relating to numerous installations subsequent to December, 1951 is irrelevant on the custom and usage as to installations before the enactment of section C26–1161.0, such as appellant's, since the more recent installations were mandated by the Administrative Code and the alleged custom and usage could play no part therein.

In addition, it was prejudicial error to admit, over appellant's objections based on irrelevancy and immateriality, the various advices received by appellant from Otis Elevator Co., its servicing agent, that "the narrow gauge comb plates and step treads * * * be installed." It is irrelevant, as stated in the dissent, that appellant acknowledged receipt of the notices in response to plaintiffs' notice to admit. "Any admission shall be subject to all pertinent objections to admissibility which may be interposed at the trial." (CPLR 3123, subd. [b].) As heretofore indicated, appellant duly objected to their admission. The letters were admitted on the theory they gave notice of an alleged dangerous condition. This they did not do. The best that can be said for them is that they advised appellant that there was in the market an escalator with ¼-inch treads. There is no requirement in the law that appellant use the latest or safest equipment. (*Levine* v. *Blaine,* 273 N. Y. 386, 389; *Bennett* v. *Long Is. R.R. Co.,* 163 N. Y. 1; *Harley* v. *Buffalo Car Mfg. Co.,* 142 N. Y. 31.) The notices do not purport to apprise of any dangerous condition or custom or usage relative thereto. After several hours' deliberation, the jury requested the Otis advices. It would appear that the verdict reflects substantial reliance thereon. The record shows the letters were admitted by the court over objection to "be given that probative value which the jury decides it is entitled to." Plaintiffs' counsel argued in summation that the letters conveyed notice of an unsafe condition and that defendants failed to explain their failure to comply with the suggestions contained in said advices. This compounded the error, since the letters did not show a dangerous condition and there was no obligation on the part of appellant to accept the suggestions.

It was also an improvident exercise of discretion to admit the testimony of Dr. Dickar, whose report had not been previously served on appellant, contrary to the provisions of sub-

division 8 of rule XI of the Supreme Court Rules of Bronx and New York Counties. (22 NYCRR 660.11 [h].) The record establishes plaintiffs adduced extensive medical evidence by the treating doctor and no special circumstances support a departure from the rule.

We are also of the opinion that the verdict is against the weight of the evidence on negligence and proximate cause, and grossly excessive.

Accordingly, the judgment should be modified on the law and facts to the extent of vacating the award and directing a new trial limited on the issue of liability to the alleged negligent maintenance of the escalator and damages, if any, and as so modified, affirmed, with costs to abide the event.

McGIVERN, J. (dissenting). If the majority is correct in its analysis, there should be no new trial. The entire complaint should be dismissed. In effect that is the result achieved by the majority's disposition, either substantively or by procedural impediment, notwithstanding a jury verdict in the plaintiff's favor.

But, in my view, the majority has not properly conceived one of the basic premises of the plaintiff's case, i.e., overcrowding. I feel the plaintiff made out a case of negligence prima facie on this score and the Trial Judge did not err in submitting the case to the jury. In addition to the descriptions of crowding from the witnesses, we may note December 27, 1961 was no ordinary day at Stern's. It was but two days after Christmas. It was a post-Christmas gift exchange day. Children were on vacation. And Stern's had by advertisement invited all to a marionette show. Children, with all their unpredictable vagaries of behaviour, were expected. The accident happened at 5:30 P.M., from the second to the first floor, at closing time exodus, on an Otis escalator with old style half-inch comb plates, installed about 1937. And there were no guards.

Although designed to stop automatically in such an emergency, long after the child's hands became entrapped, the escalator continued to run. Said an eyewitness: "It was continuing for an amazingly long time. Everybody was screaming, 'Stop the escalator.' 'Turn it off.' 'Can't anybody stop the escalator?' And everybody was milling around. They ran to the nearest sales people. Nobody seemed to know how to turn it off."

On the issue of overcrowding, the majority cites four cases. Not one involved an escalator. But there are escalator cases, involving overcrowding, children, the amputation of fingers, Otis

escalators (circa 1937) cases arrestingly similar to the facts at hand — and recovery has been unanimously affirmed.

Consider *Abravanel* v. *Ohrbach's, Inc.* (294 N. Y. 674). That case also involved a young boy, in fact, only three and a-half years of age, the amputation of fingers of both hands, over-crowding, lack of guards, and an Otis escalator installed about 1936. The case was tried before Mr. Justice FROESSEL and a jury. In legal fact, the record was far less impressive than the one under study. The day was May 14, 1938, a day of no significance, described in the trial record, as " a very moder-ate day ", " a quiet day ", not a " sales " day, and not during a busy month. Children had not been invited to a show. There was no claim at all of " negligent maintenance." That issue was withdrawn from the case. There was not a glimmer of a reference to the escalator as a " dangerous instrumentality," which the majority regards as a " primary question ". Nor was there proof of prior accidents. Actually, the escalator stopped, almost immediately, unlike the case before us. And recovery was approved by a unanimous Court of Appeals.

Consider *Lee* v. *Pennsylvania R. R. Co.* (192 F. 2d 226 [C. A. 2d]). The plaintiff child was but three years of age, unaccom-panied by an adult. The accident resulted in the amputation of a finger and the scarring of another. The proof on the issue of overcrowding was shaky, far less convincing than the proof at hand. Again, we have an Otis escalator installed about 1938. And just as in the instant case, there was evidence that in 1946 Otis manufactured a type of escalator with narrower treads than those in the accident — separated by only ¼ of an inch. Recovery was sanctioned by a unanimous tribunal. Said the court, per CLARK, J. (p. 229): " New York has adopted the generally honored rule that testimony of the practices of others may be adduced in order to place an allegation of negligence in a context of general usage, thus assisting the jury in formu-lating the standard of care of reasonable men. This rule is available to plaintiffs to show departure from and defendants to show adherence to an accepted standard. Shannahan v. Empire Engineering Corp., 204 N. Y. 543, 98 N. E. 9, 44 L. R. A., N. S., 1185; Gardner v. Friederich, 25 App. Div. 521, 49 N. Y. S. 1077, affirmed 163 N. Y. 568, 57 N. E. 1110; Learner v. Sears, Roebuck & Co., 274 App. Div. 905, 83 N. Y. S. 2d 59."

The court in *Lee* also said (p. 230): " We think therefore that the evidence here was admissible, followed as it was by a specific charge made at the end of the general instructions by the judge that the defendant was not obliged ' to have the best equipment or the safest place, but only such as are reasonably

safe and appropriate for the business.' There is no question but that safer and better practices can be shown in evidence if it is accompanied by a charge that such does not control the issue of negligence. Rothstein v. Monette, City Ct., N. Y. 17 N. Y. S. 2d 369, 373; Bennett v. Long Island R. Co., 163 N. Y. 1, 57 N. E. 79.''

. . I note the trial court in the present case said in the charge: '' I charge you that the defendant was not obliged to have the best, most modern or safest equipment but only such as is reasonably safe and appropriate for business.'' And the trial court herein also instructed the jury there was *no* claim the escalator was defective or in violation of any law when it was installed or at the time of the accident. Nor was there any request by Stern's counsel for a charge that Stern's exemption from complying with the regulatory ordinance was some evidence of due care.

Nor can I accept the interpretation of the majority that *Lee* (*supra*) did not decide the issue of overcrowding. After discussing the evidence, specifically referring to crowding and lack of policing, the court said (p. 228): '' The defendant's first contention, that the evidence was insufficient to sustain the jury's verdict, is without legal merit.'' Further, the court said (p. 228): '' Such issues are particularly within the realm of the jury * * * Here plaintiffs made out a *prima facie* case of negligence, and hence the trial judge did not err in submitting the case to the jury.''

And on the question of custom, the witness Hochstrasser stated as his opinion there *was* a custom with respect to safety which had come about as a result of experience in the industry. The Judge in his charge was careful to point out this opinion was not conclusive, and as noted above the defendant was not obliged to have the best or most modern equipment, and the essential question was whether the defendant acted with reasonable care under the circumstances. Indeed, the charge as to custom was cautiously in accord with the applicable rules set forth in Richardson, Evidence (9th ed., § 192) entitled '' Evidence of General Custom or Usage in Negligence Cases.''

For other escalator cases involving overcrowding as a factual issue, where recovery has been sanctioned (see *Perkins* v. *Macy & Co.,* 254 App. Div. 694, mot. for lv. to app. den. 278 N. Y. 741). (See, also, *Newberg* v. *Macy & Co.,* App. Term, 1st Dept., Jan., 1930, lv. to app. den. 228 App Div. 804.)

Yet the majority is concerned about a series of letters written by the defendant Otis to the defendant Stern's. These letters were in the case from the beginning. See notice to admit, dated

January 10, 1967. Stern's at that point, made no formal move for a protective order, as permitted by CPLR 3103. Instead, Stern's admitted receipt of the letters, January 17, 1967. And so did Otis. In the opening by plaintiff's attorney, references were made to them. There was no objection. The attorney for Otis, in his opening, said: "*Otis, in the interests of safety and service, has made recommendations to Stern to modify its escalator to bring it up to present standards in the interests of safety.*" (Emphasis supplied.) And there was no objection. On their actual presentation there was a fitful objection, but the court received the letters as bearing on knowledge or notice. I think the trial court was correct. (See *Kelly* v. *Wasserman*, 5 N Y 2d 425.) They certainly were cumulatively relevant to the question of custom. And it is noteworthy that some letters indicated urgency and bore the notation: "essential and should have your immediate attention."

As for damages, there were amputations to both hands. It was a gruesome injury, poignantly affecting him all the days of his life. The boy had a life expectancy of 61.23 years. I cannot view the damages as "grossly" excessive.

As for the testimony of Dr. Dickar, the court showed its awareness of rule XI of the Rules of the Supreme Court, New York and Bronx Counties and carefully delimited the testimony.

After a 20-day trial, with nearly 1,300 pages of testimony, the one central, essentially simple question was ultimately distilled for the jury, i.e., overcrowding causing injury to a boy on an outmoded escalator. Viewed in the afterglow of an appellate court, there may have been imperfections in the trial; it was not an unfair one. I fail to see how another trial will teach us anything about this case we do not already know.

Accordingly, I dissent and vote to affirm the verdict and judgment in favor of the plaintiffs.

STEUER, P. J., TILZER and RABIN, JJ., concur with McNALLY, J.; McGIVERN, J., dissents in opinion.

Judgment modified, on the law and the facts, to the extent of vacating the award, severing the action, and directing a new trial limited on the issue of liability to the alleged negligent maintenance of the escalator and damages, if any, and as so modified, affirmed, with costs to abide the event.