VINCENT N. TRIMARCO et al., Respondents-Appellants, v IRVING KLEIN et al., Individually and as Copartners Doing Business as GLENBRIAR COMPANY, Appellants-Respondents.

First Department, July 9, 1981

APPEARANCES OF COUNSEL

*Thomas R. Newman* of counsel *(Louis G. Adolfsen* with him on the brief; *Cardo & Sforza* by *Toberoff & Broome,* attorneys), for respondents-appellants.

*Norman H. Dachs* of counsel *(Lewis I. Wolf* with him on the brief; *Shayne, Dachs, Stanisci & Harwood,* attorneys), for appellants-respondents.

### OPINION OF THE COURT

*Per Curiam.*

In this personal injury action in which plaintiff's forearm and side were severely gashed during the night of July 10, 1976, when the untempered glass door of his bathtub enclosure shattered, the parties cross-appeal from a judgment entered May 5, 1980, Supreme Court, Bronx County, in favor of plaintiff and against defendant in the sum of $240,656. The judgment was entered upon a jury verdict (after trial before ROBERT C. WILLIAMS, J. and a jury) which found plaintiff's damages to be $400,000, but also found that he was 40% negligent and defendant 60% negligent and thus allocated their award accordingly.

Plaintiff, a tenant under a lease in an apartment building erected in 1953, brought suit against his landlord upon the theory that in maintaining the building the landlord was negligent in permitting the apartment bath to be enclosed by sliding glass panels, a condition which the landlord should have known was inherently dangerous to the tenants, particularly including the plaintiff.

Plaintiff maintains that the landlord should be held liable for his injuries. In brief, he claims that the continued use of glass in the shower panel was negligence on the landlord's part, and that the shattering glass was the proximate cause of plaintiff's injuries.

It was plaintiff's testimony and his sole claim during trial that he had merely attempted to slide the panel when the glass suddenly disintegrated. There was never an indication that the panel was defective or the glass, which was one-quarter inch thick, was loose or in danger of breaking. The record showed that the glass in question was able to withstand a force of 80 pounds per square inch without

sacrificing its integrity. In this respect, we note that despite an entry in the hospital record that plaintiff fell while in the bathtub and his arm shattered the glass panel, plaintiff insisted at the trial that that was not the manner in which the accident occurred, and that he did not in any degree contribute to the circumstances which caused his injuries.

Although the plaintiff testified that he in no way contributed to the accident, the jury determined that the verdict against the landlord should be reduced by 40%, thus attributing to the plaintiff failure to a substantial degree to use due care upon leaving the bathtub. This finding in effect is a rejection of the sole claim of plaintiff that the accident occurred without any fault on his part, a finding which is consistent with that portion of the hospital record to which we have earlier referred.

The proof at trial raises this issue: In installing the glass shower panel and permitting it to remain in plaintiff's bath, did defendant fail in any duty it owed to the plaintiff? Plaintiff argues that although the glass panel installation was acceptable and proper when the apartment building was constructed, there was information available to builders and property owners prior to the date of the accident which highlighted the danger to apartment house tenants of the continued use of such enclosure (Glass Door Injuries & Their Control [US Health Debt booklet], p 1; Hazard Analysis—Injuries Involving Architectural Glass [US Prod Safety Comm, Bur of Epidemiology, booklet (Nov., 1974)]); that as a result there devolved upon builders and owners at that time a duty to protect tenants, at least to the extent of replacing previously installed glass enclosures with safety glass.

In an effort to bolster this theory, plaintiff availed himself of "expert" testimony to establish that there existed a custom and usage in the community among builders and property owners to substitute shatterproof glass or safety glass for glass panels when used in connection with bathroom showers because of the safety factor involved.

Indeed, custom and usage is a test of negligence which may be considered by a jury. Such evidence may have relevance in view of all the circumstances of a particular

case *(Saglimbeni v West End Brewing Co.*, 274 App Div 201, affd 298 NY 875). However, "[o]ne is not obliged to use the best methods or to have the best equipment or the safest place, but only such as are reasonably safe and appropriate." (41 NY Jur, Negligence, § 21, citing *Levine v Blaine Co.*, 273 NY 386; *Garthe v Ruppert*, 264 NY 290.)

Even assuming that there existed a custom and usage at the time to substitute shatterproof glass, more is required to transform custom and usage into a duty. "A custom to be relevant, must be reasonably brought home to the [defendant's] locality, and must be so general, or so well known, that the [defendant] may be charged with knowledge of it or with negligent ignorance" (Prosser, Torts [4th ed 1971], p 168. Putting it in other words, the mere fact that there existed at the time a better way or a safer method of enclosing showers does not mean that there was a duty upon the defendant landlord to effect such a change *(Levine v Blaine Co., supra; Garthe v Ruppert, supra)*. Plaintiff is unable to demonstrate that the failure to follow the "custom and usage" asserted produced a danger which should have been recognized by defendant inasmuch as the record fails to show any accident occurring in the building since its construction which would have made plaintiff's accident foreseeable. *(Reilly v Board of Educ.*, 205 App Div 431.)

Furthermore, no request was ever made of defendant landlord by plaintiff that the glass panel be replaced, nor did plaintiff ever put defendant landlord on notice that the glass panel was defective.

A glass door is neither a dangerous condition nor a trap or a hidden danger for someone lawfully on the premises and its presence does not require the landlord to give such person a special notice or warning with respect to such a door *(Bua v Fernandez*, 15 NY2d 664).

Plaintiff introduced into evidence, over defendant's objection, a statute, effective July 1, 1973, requiring shatterproof glass to be used in bathroom shower installations and other "hazardous locations" (General Business Law, §§ 389-m, 389-o).* This evidence was not received upon

---

* Sections 389-m and 389-o of the General Business Law read as follows:
  "§ 389-m. Definitions

any contention that the statute was violated, but as the trial court stated: "It is received to permit you, the jury, to consider it along with all of the other proof in this case, *as a standard by which you may measure the conduct of the defendants.*" (Emphasis supplied.)

There can be no doubt that the receipt of this legislation in evidence, despite the avowed purpose for which it was introduced, was prejudicial to the defendant *(Jokelson v Allied Stores Corp.*, 31 AD2d 200, mot for resettlement den 31 AD2d 806). The statute was not designed to have retroactive effect. It did not require shatterproof glass replacement in existing shower enclosures containing ordinary glass and, therefore, had no relevance to the issues in the case. Were we not of the opinion that there is no case proved against defendant as a matter of law, we would agree with Justice FEIN that the receipt of this legislation was so prejudicial as to warrant a reversal and a new trial.

It is claimed that the landlord's installation and maintenance of the glass panel was the proximate cause of the accident. Installation and maintenance are not denied by defendant. What is challenged is plaintiff's claim that the glass panel, without any contributing act on plaintiff's part, suddenly disintegrated while plaintiff was in the shower and thus the breaking glass caused plaintiff's injury.

"As used in this article, the following words and phrases shall have the following meanings:

"(1) 'Safety glazing material'. Any glazing material, such as tempered glass, laminated glass, wire glass or rigid plastic, which meets the test requirements of the American National Standards Institute Standard (ANSI Z-97.1-1972), and which are so constructed, treated or combined with other materials as to minimize the likelihood of cutting and piercing injuries resulting from human contact with the glazing material.

"(2) 'Hazardous locations'. Those structural elements, glazed or to be glazed, in industrial, commercial and public buildings known as framed or unframed glass entrance doors; and those structural elements, glazed or to be glazed in residential buildings and other structures used as dwellings, industrial buildings, commercial buildings and public buildings, known as sliding glass doors, storm doors except operating vents only on jalousie type doors, shower doors, bathtub enclosures and those fixed glazed panels immediately adjacent to entrance and exit doors which may be mistaken for doors; whether or not the glazing in such doors, panels and enclosures is transparent.

"§ 389-o. Safety glazing materials required.

"It shall be unlawful within the state of New York to knowingly sell, fabricate, assemble, glaze, install, consent or cause to be installed glazing materials other than safety glazing materials in or for use in, any 'hazardous locations'."

As noted, the record is barren of proof of any defect in the glass or that the glass used in the fashion described herein possessed such lack of tensile strength as to disintegrate after lengthy use. It is more than likely that the glass was caused to shatter by some act of plaintiff, perhaps indeed by falling in the bathtub as the hospital record reflects, and as the jury found, rather than that the glass, without the application of excessive force, shattered and caused plaintiff's injury.

Plaintiff also seeks recourse under the Multiple Dwelling Law. Section 78 provides (as far as pertinent here) : "1. Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situate, shall be kept in good repair. The owner shall be responsible for compliance with the provisions of this section."

■ We are unable to find within that section of the law a duty which required the landlord to effect the substitution of safety glass for the glass originally placed in the sliding bath panels at the time the building was constructed.

An action by a tenant against a landlord for personal injuries sustained as a result of a defective condition of premises cannot be maintained unless it is shown that the landlord had actual or constructive notice of the defective condition of the premises *(Costagliola v Home Owners' Loan Corp.*, 35 F Supp 930, 931-932). Notice of the alleged defect is essential *(Becker v Manufacturers Trust Co.*, 262 App Div 525, mot for rearg den 263 App Div 810).

Notwithstanding section 78 of the Multiple Dwelling Law, a landlord is not an insurer and is not required to make leased premises absolutely safe for any purpose for which they might possibly be used. A landlord is required only to make the premises reasonably safe for the purpose for which they were intended to be used or for a purpose which the landlord should reasonably anticipate. *(Collins v Noss*, 258 App Div 101, 102).

■ We subscribe to the opinion that under the facts of this case there was no duty on the part of the landlord to install shatterproof glass in the shower panel.

Furthermore, no act of the defendant landlord prox-

imately caused the injuries suffered by plaintiff *(Rivera v City of New York,* 11 NY2d 856). Unfortunately, plaintiff's case is illustrative of the ancient phrase *"Damnum absque injuria"*—an injury to the person for which the law furnishes no redress (41 NY Jur, Negligence, § 3). Hence, the verdict cannot stand.

Accordingly, the judgment entered May 5, 1980, Supreme Court, Bronx County, in favor of plaintiff and against defendant, in the sum of $240,656 should be reversed on the law and the complaint dismissed, without costs.

SANDLER, J. (dissenting). The major issue presented on this appeal is whether there was sufficient competent evidence presented to the jury to support the finding, implicit in the verdict in plaintiff's favor, that the landlord breached its duty of reasonable care toward the plaintiff which was the proximate cause of plaintiff's injuries. In determining whether plaintiff made out a prima facie case, the court must weigh "the probability of the harm, the gravity of the harm against the burden of precaution, and other relevant and material considerations from which it can determine whether reasonable persons can differ as to whether the defendant was negligent". *(Quinlan v Cecchini,* 41 NY 2d 686, 689.)

Plaintiff introduced expert testimony and testimony of the general manager of the company that managed the building from which the jury could have concluded that for 12 or more years prior to the accident, safety glass was widely recognized as a material readily available, at relatively moderate cost, for use in bathtub enclosures and similar hazardous locations, and that the use of such material would prevent the occurrence of severe injuries such as those suffered by plaintiff. The factual issue determining liability was whether the defendant landlord acted unreasonably by taking no action to replace the bathtub enclosures, or to inform tenants that the bathtub enclosures contained nonsafety glass, and that safety glass was available as a replacement at moderate cost (between $40 and $98) which might be assumed by either party or apportioned between them.

Factors that the jury could have considered on this issue,

aside from the 12 or more years during which time the danger of using nonsafety glass in hazardous locations was becoming more widely known in the building industry, included " 'the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk' ". (Basso v Miller, 40 NY2d 233, 241, quoting from Smith v Arbaugh's Rest., 469 F2d 97, 100.) After reviewing the record, tested by these criteria, I disagree with the conclusion of the majority opinion that, as a matter of law, no case was proved against defendant, in effect granting the equivalent of summary judgment to defendant in the face of considerable evidence, in a trial record of over 1,000 pages, from which the jury might have concluded that the defendant's failure to replace the glass with safety glass or at least to give a replacement option to plaintiff in the face of the known danger, was unreasonable. "It was particularly appropriate to leave this issue to the jury, not only because of the idiosyncratic nature of most tort cases * * * or because there was room for a difference in view as to whether [defendant's] conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because, in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process". (Havas v Victory Paper Stock Co., 49 NY2d 381, 388; see Dobess Realty Corp. v City of New York, 79 AD2d 348, 354-355 [app pending]; Triggs v Advance Trucking Corp., 23 AD2d 777.)

Nor do I find persuasive the majority's conclusion that no act of the defendant landlord proximately caused the injuries suffered by plaintiff. Rivera v City of New York (11 NY2d 856) cited by the majority in support of this proposition, is plainly inapposite. In Rivera, the infant plaintiff slipped and fell into a bathtub full of hot water while standing on the edge of the bathtub, wearing wet boots, and leaning against a wall in an attempt to reach a light cord. The Court of Appeals held that the accumulation of hot water in the tub was not the proximate cause of the injury because plaintiff's actions were not foreseeable.

In the case at bar, plaintiff was using the bathtub for its intended purpose, and whether the glass shattered because plaintiff slipped in the tub and struck the glass, or because he pulled too hard on the handle when opening the door, the jury could have found such event foreseeable. The Court of Appeals has recently observed: "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." *(Derdiarian v Felix Contr. Co.,* 51 NY2d 308, 315.) "That defendant could not anticipate the precise manner of the accident or the exact extent of injuries * * * does not preclude liability as a matter of law where the general risk and character of injuries are foreseeable." *(Supra,* at pp 316-317; see *Pagan v Goldberger,* 51 AD2d 508; *Farrell v Royal Crown Bottling Co.,* 53 NY2d 619, revg 72 AD2d 531; *Mozer v Semenza,* 177 So2d 880 [Fla].)

Nor do I agree that reversal is in any event required because the jury was permitted to consider the enactment in 1973 of sections 389-m and 389-o of the General Business Law. The jury was carefully instructed that the statute was *not* admitted to show violations of those sections by defendant, but rather as some evidence of the standard of care required to be used by defendant in the maintenance of the bathtub enclosure and as bearing on the question of what constituted reasonable care. Although concededly a close question, over which respectable authorities are about evenly divided, I believe it was appropriate in this case to permit the jury to consider the enactment of the statute under the careful limiting instructions given by the Trial Judge.

One Federal court observed in 1973: "The modern trend in federal and state courts appears to favor the admission of regulations as evidence of a standard of care, even where the regulations do not apply with the force of law to the individual defendant." *(Hassan v Stafford,* 472 F2d 88, 94.) Cases supporting this view include *Curtis v District of Columbia* (363 F2d 973), *Klein v District of Columbia* (409 F2d 164), and *Dorsey v Yoder Co.* (331 F Supp 753). Prosser (Torts [4th ed, 1971], § 36, p 202) states that

"where the statute does set up standard precautions, although only for the protection of a different class of persons, or the prevention of a distinct risk, this may be a relevant fact, having proper bearing upon the conduct of a reasonable man under the circumstances, which the jury should be permitted to consider. There is, in other words, a statutory custom which is entitled to admission as evidence." I note in this regard that the statute in question was designed to meet the same risk, and to the same class of persons, as are present in the instant case. The Legislature may have deemed it unwise to impose penal sanctions of up to a year in jail and a $10,000 fine for those landlords who did not replace every pane of nonsafety glass with safety glass in hazardous locations in their previously constructed buildings. But that legislative forbearance does not detract from the very relevant probative fact, implicit in the statute's enactment, that the standard of using only safety glass in hazardous locations was so widely accepted by 1973 as to warrant penal sanctions for any future deviations from that standard, and that the enactment of the statute was a significant source of information to defendant landlord of the danger to its tenants which could have been avoided by corrective action taken over a reasonable period of time. Harper and James, Law of Torts (vol 2, § 17.6, p 1006) is also in accord with the view that a statute, although it might not cover the precise situation before the court, should be considered some evidence of the proper standard of care in a sufficiently analogous situation.

Cases holding a contrary view include *Ellis v Caprice* (96 NJ Super 539) and *Simms v Southwest Texas Methodist Hosp.* (535 SW2d 192 [Tex] [this latter case dealing with the admissibility of a regulation adopted after plaintiff's injury]). Wigmore, Evidence (Chadbourn Rev, vol 2, § 461, p 607) considers it unwise to give any secondary status to an ordinance, as evidence of negligence, whenever it is not to have the substantive status of a role of negligence per se.

The closeness of the question, and the even division among the cases and commentators, suggest that it would be inappropriate to establish a uniform per se rule requir-

ing in every case acceptance or exclusion of such evidence. The issue should be one to be determined in the first instance by the trial court in the exercise of a sound discretion, weighing the necessity for the introduction of the statute and its probative value to the issues in the case, against the possibility of prejudice arising from its submission to the jury. In the circumstances presented herein I believe that the Trial Judge properly exercised his discretion to allow the jury to consider the statute for a limited purpose. Accordingly, the judgment of the Supreme Court, Bronx County, entered May 5, 1980 in favor of plaintiff in the sum of $240,656 should be affirmed.

FEIN, J. (concurring in part; dissenting in part). I concur with Justice SANDLER that the evidence was sufficient to support a jury verdict that the landlord breached its duty of reasonable care toward the plaintiff and that such breach was a proximate cause of plaintiff's injuries. I see no need to expand on his thoughtful opinion demonstrating that liability was established.

However, I disagree with his conclusion that it was proper to submit sections 389-m and 389-o of the General Business Law for the jury's consideration. The ostensible reason for receiving the statute in evidence was to show custom and usage. However, the legislation was applicable only to installations subsequent to its effective date, July 1, 1973. It is undisputed that the glass shower door here involved was installed long prior to that date. The statute did not require removal of existing untempered glass installations and replacement with "safety glazing material". The statute only applied to future installations. Thus it was error to consider the statute as applicable in any way. The error was not cured by the Trial Judge's instruction to the jury that the statute was to be considered only for purposes of establishing custom and usage and not as a statement of the applicable law. This could only be misleading. Moreover, the error was compounded by the fact that the plaintiff's attorney repeatedly referred to the statute as making the use of the nonshatterproof glass "unlawful". It was not.

When the Legislature made it "unlawful" to "install * * * glazing materials other than safety glazing materials in

or for use in, any 'hazardous locations' " (General Business Law, § 389-o) after the effective date of July 1, 1973 (L 1972, ch 609, § 2), it made clear that the existence of pre-installed nonshatterproof sliding glass doors was not to be considered a violation of law. Thus the statute could not establish a standard of care or custom and usage with respect to pre-existing installations.

Justice SANDLER has cited a "trend" in other jurisdictions toward the admission in evidence of statutes and regulations not precisely in point as evidence of a standard of care. I am not persuaded by the rationale of such cases, nor do I believe they reflect the applicable New York law.

In *Jokelson v Allied Stores Corp.* (31 AD2d 200, mot for resettlement den 31 AD2d 806) the infant plaintiff suffered injury in December, 1961 when his fingers became wedged between the treads and the combing of defendants' escalator. The tread separations on this escalator, installed in May, 1937, measured one-half inch. In December, 1951, former section C26-1161.0 of the New York City Administrative Code was enacted requiring tread separation slots on escalators to be no wider than one-quarter inch. However, the statute specifically exempted escalators installed prior to January 1, 1938. This court held that it was prejudicial error to rely upon the statute at trial for the purpose of establishing failure to maintain and operate the escalator pursuant to a standard of care, measured by custom and usage, stating (31 AD2d, at p 203) : "Plaintiffs' proof of custom and usage relating to numerous installations subsequent to December, 1951 is irrelevant on the custom and usage as to installations before the enactment of section C26-1161.0, such as appellant's, since the more recent installations were mandated by the Administrative Code and the alleged custom and usage could play no part therein."

Receipt in evidence of such legislation to establish custom and usage as the applicable standard of care may well mislead the jury however careful the court's instructions. It was prejudicial error to receive the statute and charge the jury with respect thereto *(Carhart v Relmar Operating Corp.*, 66 AD2d 680, 681). Such error requires that the judgment appealed from be reversed and a new trial directed.

There is no basis for dismissing the complaint. There was ample expert testimony as to the custom and practice preceding the enactment of the statute to replace regular glass for bathtub enclosures with safety glazing. It was supported by the reports of the Consumer Safety Commission, the American National Standards Institute and the National Safety Council. The evidence plainly was sufficient to create a jury issue as to whether a standard of care had developed and whether it was violated.

Although the statute was not admissible to prove a standard of care based on custom and usage, its adoption in response to felt needs plainly demonstrated that the use of nonshatterproof glass in shower doors was deemed a dangerous condition. The statute describes a shower door as a "hazardous location" and imposes sanctions for installing non-"safety glazing materials" in such locations after its effective date. It would be anomalous to hold that as a matter of law, the glass door here involved was not a dangerous condition. Judicial notice of the statute precludes a finding that there was no negligence as a matter of law. Accordingly, I must respectfully disagree with the majority's ruling that as a matter of law there was no dangerous or defective condition, as well as its conclusion that as a matter of law the landlord breached no duty by the maintenance of such a glass shower enclosure.

I find no basis for the majority's conclusion that the duty to replace the glass was not that of the landlord. It is undisputed on this record that the glass was installed by the landlord. The landlord's own manager, albeit he became manager after the accident, testified that landlords in the community involved generally knew of the hazard and that long before the statute was enacted it was the custom to replace such glass with safety glazing materials when requested by the tenant or when the glass in place broke. This plainly was a recognition of a dangerous condition. Such evidence of the existence of the custom and practice of landlords in the community to replace such glass was sufficient to establish the notice which the majority finds to be lacking. At least a jury could so find.

This is not a case in which a defect in a multiple dwelling developed without the landlord's knowledge, so that notice

was required. This is rather a case where a jury could properly find that landlord knew that the glass in place was not shatterproof and was dangerous. Why else would replacements be made with safety glazing and not with the same glass? Thus the landlord is not being required to use the best or the safest or a better or safer way, as the majority suggests. It is sufficient for liability to establish that the glass in use was not safe and that this was generally known to landlords in the community. Of this there was ample evidence. Thus we are not concerned with the rule that the existence of a better or safer practice does not establish a standard, but rather with whether there was compliance with a standard of reasonable care established by custom and usage. This was for the jury (see *Bennett v Long Is. R. R. Co.*, 163 NY 1). A landlord must meet "a 'standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability.' " *(Loeser v Nathan Hale Gardens*, 73 AD2d 187, 190.) The practice of replacing ordinary glass with safety glass, upon request or when the ordinary glass breaks, imports a recognition that ordinary glass bathtub enclosures may constitute a dangerous condition. At least a jury could so find.

That a glass shower door is a portion of the multiple dwelling, which it is the responsibility of the landlord to maintain, is plain (Multiple Dwelling Law, § 78; see *Weiss v Wallach*, 256 App Div 354, 357).

The evidence was sufficient for a jury to find that there was a dangerous condition known to the landlord which the landlord had the duty to remedy and which was a proximate cause of the accident and plaintiff's injuries.

The judgment appealed from should be reversed and a new trial directed with costs to abide the event.

BIRNS, J. P., SULLIVAN and LYNCH, JJ., concur; FEIN, J., concurs in part and dissents in part in an opinion and SANDLER, J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, entered on May 5, 1980, reversed, on the law, and the complaint dismissed, without costs and without disbursements.